229 N.J. Super. 553 (1989)
552 A.2d 212
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES J. PASANEN, DEFENDANT-APPELLANT.
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
CONRAD P. HEMPELE AND SHARON HEMPELE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 25, 1988.
Decided January 12, 1989.
*554 Before Judges ANTELL, HAVEY and BROCHIN.
*555 Susan Bielanowski argued the cause for appellant James J. Pasanen (Gannon, Murphy & Schwartz, attorneys; Edward V. Gannon, on the brief).
Boris Moczula, Deputy Attorney General, argued the cause for plaintiff-respondent, plaintiff-appellant (W. Cary Edwards, Attorney General of New Jersey, attorney; Boris Moczula, of counsel and on the brief).
Ernest F. Duh argued the cause for respondent Conrad P. Hempele.
Arthur J. Russo argued the cause for respondent Sharon Hempele.
The opinion of the court was delivered by ANTELL, P.J.A.D.
In these appeals, which we have consolidated for review, we consider the extent to which police may, without a warrant, constitutionally search for and seize evidence, from containers of household refuse. In State v. Pasanen, the trial court found that defendant's plastic garbage bags had been left out on the public roadway for collection. It held, however, that by placing a container of garbage out for collection, one does not necessarily relinquish all privacy interests in its contents. Reasoning that although one may justifiably expect that such garbage will not be searched arbitrarily, it concluded that expectations of privacy were not justified as to searches made in furtherance of a police investigation grounded in "some plausible suspicion" of criminal wrongdoing. It found that the police acted on the basis of suspicions which, though not rising to the level of probable cause, were nevertheless sufficient to "alert them to the fact that there [was a] reasonable professional basis for investigation," and it denied defendant's motion to suppress. The items sought to be suppressed had been seized under a search warrant issued in partial reliance upon the evidence previously taken without a warrant from defendant's garbage. Defendant appeals.
*556 In State v. Hempele, the State appeals from the trial court's order suppressing evidence also seized under a warrant based upon the results of a warrantless garbage search.[1] The court stated that it was granting relief because the State had failed to demonstrate that the plastic pail from which the refuse was taken was located on public property at the time of the search.
Although the question immediately presented in both cases is whether the search warrants were valid, our inquiry focuses on the legitimacy of the garbage seizures. We conclude that police may search without a warrant through abandoned household refuse where they have information which, though less than probable cause for the issuance of a search warrant, may reasonably induce conscientious and experienced police officers to believe that their exploration will uncover evidence of crime.
In California v. Greenwood, 486 U.S. ___, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), decided after the determinations here under review, the United States Supreme Court held that "the warrantless search and seizure of garbage left for collection outside the curtilage of a home" was not prohibited by the Fourth Amendment to the United States Constitution. Id., 486 U.S. at ___, 108 S.Ct. at 1627, 100 L.Ed.2d at 34. Although it did not believe this fact to be critical, the trial court in State v. Pasanen found that the bags put out for collection in that case "were within the legal limits of the roadway and therefore off the private property." Under Greenwood, therefore, that search was valid pursuant to federal constitutional standards. Greenwood leaves unanswered, however, questions as to whether the seizure of household garbage is invalid under federal standards where the container searched is located, as in *557 State v. Hempele, on private property,[2] and as to the status of garbage searches under Article I, paragraph 7 of the New Jersey Constitution.
Although the narrow question framed in Greenwood addressed the validity of a warrantless search and seizure of garbage "left for collection outside the curtilage of a home," 486 U.S. at ___, 108 S.Ct. at 1627, 100 L.Ed.2d at 34, the Supreme Court ruled that the answer was controlled by whether or not defendants manifested a "subjective expectation of privacy in their garbage that society accepts as objectively reasonable." 486 U.S. at ___, 108 S.Ct. at 1628, 100 L.Ed.2d at 36. The Court then rejected defendants' claim of privacy in the following language:
Here, we conclude that [defendants] exposed their garbage to the public sufficiently to defeat their claim to Fourth Amendment protection. It is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public.
* * * * * * * *
Furthermore, as we have held, the police cannot reasonably be expected to avert their eyes from evidence of criminal activity that could have been observed by any member of the public. Hence, "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." [486 U.S. at ___-___, 108 S.Ct. at 1628-1629, 100 L.Ed.2d at 36-37 (quoting Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 582 (1967) (footnotes omitted) (emphasis supplied))].
The implication of the foregoing is that the trash container's presence on private property does not conclusively impair the validity of a warrantless police search under the federal Constitution. Other courts have also reached this result where the *558 refuse was otherwise accessible to the public. See, e.g., United States v. Kramer, 711 F.2d 789, 792 (7th Cir.1983), cert. den. 464 U.S. 962, 104 S.Ct. 397, 78 L.Ed.2d 339 (1983) (police removed trash bags from plastic trash containers located by roadside within fence in front of defendant's home); United States v. Sumpter, 669 F.2d 1215, 1221 (8th Cir.1982) (police retrieved garbage from collector who removed it from defendant's premises); United States v. Biondich, 652 F.2d 743, 744-745 (8th Cir.1981), cert. den. 454 U.S. 975, 102 S.Ct. 527, 70 L.Ed.2d 395 (1981) (police obtained garbage from defendant's private garbage-hauling service which removed it from defendant's property); United States v. Crowell, 586 F.2d 1020, 1024-1025 (4th Cir.1978), cert. den. 440 U.S. 959, 99 S.Ct. 1500, 59 L.Ed.2d 772 (1979) (defendant's private trash collector removed trash bag from defendant's property and turned it over to police); United States v. Alden, 576 F.2d 772, 776-777 (8th Cir.1978), cert. den. 439 U.S. 855, 99 S.Ct. 167, 58 L.Ed.2d 161 (1978) (federal agents removed items from pile of partially burned trash located on defendant's property); United States v. Shelby, 573 F.2d 971, 973-974 (7th Cir.1978) (at request of federal agents, sanitation workers removed and turned over garbage located within fence on defendant's property); Cooks v. State, 699 P.2d 653, 656 (Okla. Crim. 1985), cert. den. 474 U.S. 935, 106 S.Ct. 268, 88 L.Ed.2d 275 (1985) (police confiscated evidence found in trash can located in defendant's front yard); State v. Stevens, 123 Wis.2d 303, 314-317, 367 N.W.2d 788, 794-797 (1985), cert. den. sub nom. Stevens v. Wisconsin, 474 U.S. 852, 106 S.Ct. 151, 88 L.Ed.2d 125 (1985) (collector removed garbage from defendant's garage and turned it over to police); State v. Ronngren, 361 N.W.2d 224, 228-230 (N.D. 1985) (police seized garbage which a dog had removed from defendant's property and transported to a neighbor's yard); State v. Oquist, 327 N.W.2d 587, 589-591 (Minn. 1982) (deputies removed garbage placed near public alley behind defendant's house); People v. Whotte, 113 Mich. App. 12, 317 N.W.2d 266, 268-269 (1982) (police recovered garbage located in backyard of *559 two-family house where defendant resided); State v. Schultz, 388 So.2d 1326 (Fla.App. 1980) (police confiscated trash bags located on sidewalk in front of defendant's home); State v. Fassler, 108 Ariz. 586, 592-593, 503 P.2d 807, 813-814 (1972) (police removed burlap bags from garbage cans located in alleyway on the side of defendant's house); State v. Trahan, supra, note 2, 229 Neb. 683, 428 N.W.2d 619, cert. den. sub nom. Trahan v. Nebraska, ___ U.S. ___, 109 S.Ct. 561, 102 L.Ed.2d 586 (1988) (police searched containers on defendant's property four feet from door of his home).
The determining factor in the foregoing cases was whether or not the garbage had been abandoned. That it may have been taken from private property evidently did not dictate how the question of abandonment would be resolved.
In State v. Novembrino, 200 N.J. Super. 229, 240 (App.Div. 1985), aff'd 105 N.J. 95 (1987), we noted that "our State Supreme Court has made clear its intention to afford persons in this State greater protection against unreasonable searches and seizures than afforded by the United States Supreme Court's interpretation of the Fourth Amendment." It is natural, then, that in considering the views expressed thereon by the weight of authority we remain mindful of the basically intrusive character of garbage searches. Justice Brennan described it in his dissent from Greenwood in the following language:
A single bag of trash testifies eloquently to the eating, reading, and recreational habits of the person who produced it. A search of trash, like a search of the bedroom, can relate intimate details about sexual practices, health, and personal hygiene. Like rifling through desk drawers or intercepting phone calls, rummaging through trash can divulge the target's financial and professional status, political affiliations and inclinations, private thoughts, personal relationships, and romantic interests. It cannot be doubted that a sealed trash bag harbors telling evidence of the "intimate activity associated with the `sanctity of a man's home and the privacies of life,'" which the Fourth Amendment is designed to protect. [486 U.S. at ___, 108 S.Ct. at 1634, 100 L.Ed.2d at 43 (citations omitted)].
Article I, paragraph 7 of the New Jersey Constitution, like the Fourth Amendment to the United States Constitution, also protects against unreasonable searches and seizures. When *560 determining search and seizure questions under our Constitution, New Jersey courts also apply the test of whether a reasonable expectation of privacy exists in the property seized. State v. Williams, 84 N.J. 217, 222 (1980) (citing Rakas v. Illinois, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387, 401 (1978)). In State v. Farinich, 179 N.J. Super. 1 (App.Div. 1981), aff'd 89 N.J. 378 (1982), the court concluded that there can be no such expectation in abandoned property. It wrote as follows:
In the context of the Fourth Amendment a defendant "abandons" property when he voluntarily discards, leaves behind or otherwise relinquishes his interest in the property in question so that he can no longer retain a reasonable expectation of privacy with regard to it at the time of the search. United States v. Colbert, 474 F.2d 174, 176 (5 Cir. 1973). The issue of whether property has been abandoned is factual in nature. [179 N.J. Super. at 6].
In Farinich, defendants were found to have abandoned three suitcases when they dropped them and ran from investigating police officers. The Supreme Court affirmed in the following language:
The questions remaining before the Court are whether defendants voluntarily abandoned the property searched by the police and whether such abandonment permitted the police to search the property without a warrant. On those issues, we affirm the judgment of the Appellate Division substantially for the reasons expressed in the majority opinion below. [89 N.J. at 379].
Although Farinich was decided under the federal Constitution, we conclude that its import is equally applicable to cases presented under our state Constitution. Therefore, the test which we apply herein is whether, under the particular facts presented, defendants in the cases before us retained a reasonable expectation of privacy in the seized garbage or whether, by abandoning the garbage, they forfeited or compromised that expectation. We first consider the evidence and the findings in State v. Pasanen.
From tips supplied by confidential informants that "drug activity" was taking place at 101 Elcock Avenue in Boonton Township, Lieutenant Mini of the Boonton Police Department established a surveillance over that address. This revealed that the named location was receiving visitors who had previously *561 been arrested for controlled dangerous substance violations. The officer then began a program of monitoring garbage from the Elcock Avenue address, during which seven plastic garbage bags, which had been placed on the street line adjoining the roadway, were seized. Among their contents were plastic zip-lock bags with traces of marijuana, marijuana roaches, razor blades and straws containing traces of cocaine and marijuana.
On November 28, 1986, the court issued a warrant to search the building. It was based on Lieutenant Mini's supporting affidavit which included a recital of the items taken from the garbage bags, and the ensuing house search disclosed quantities of cocaine, heroin and marijuana. Defendant Pasanen's motion to suppress that evidence rested on the contention that since the warrant relied on the evidence taken in the warrantless search of his garbage, it was improperly issued and the seizures thereunder were therefore illegal.
During the time covered by the garbage searches, codefendant Frank Cikovsky was responsible for collecting the garbage of all the residents in the building and placing it in the green plastic bags which he thereafter stored in the back of the house. On designated garbage collection days, Cikovsky transported the bags from behind the house to the front of the property for collection. The front of the house is 98 feet from the grass line adjoining the partly paved shoulder of the road. There does not appear to be an actual curb separating the grass line from the roadway.
Taking into account the results of the garbage searches, which it found lawful, the trial court concluded that the search warrant had been legally issued on probable cause and denied defendant's motion to suppress the fruits of that search. Its approval of the garbage searches was based on a determination that although defendant had not relinquished all privacy interests in the contents of the garbage, he enjoyed no reasonable expectation of absolute privacy therein, and that the searches *562 were reasonable under the circumstances. Thus, although defendant's motion was denied, recognition was given to his limited privacy interest in abandoned household refuse.
In concluding that there was a reasonable basis for the garbage searches, the court found that they were prompted by information about "drug dealing" from two reliable informants, one of whom had actually been solicited to purchase drugs by a resident of the building, supported by police observations of known drug violators visiting the premises. In effect, it found that the foregoing data were sufficient to induce conscientious and experienced police investigators to continue their investigation in the manner in which they did, and that defendant was not entitled to expect that his household refuse would be impervious to police investigations so provoked. We find that determination to be supported by sufficient credible evidence in the record. See, State v. Johnson, 42 N.J. 146, 162 (1964). We also approve as sound policy the standard formulated by the court to guard against police arbitrarily rummaging through garbage for evidence of crime. Finally, we conclude that Judge Stanton's findings establish an abandonment of the garbage so as to qualify any absolute privacy interest defendant may have had therein under Article I, paragraph 7 of the New Jersey Constitution.
In State v. Hempele, a state trooper received confidential information, from a source who had previously proved reliable, that defendants were involved in the distribution of controlled dangerous substances from their home at 303 Mill Street, in Belvidere. The informant also stated that he had personally seen, in the bedroom of defendant Conrad Hempele, a quantity of marijuana weighing approximately 50 pounds. On this information the trooper made two garbage seizures which resulted in the discovery of residues of marijuana and cocaine. Based on the foregoing data, a search warrant was issued for defendants' home on July 28, 1986. Its execution yielded a quantity of controlled dangerous substances and controlled dangerous substance *563 paraphernalia. In this case the State appeals from an order of the Law Division granting defendants' motion to suppress the evidence seized under the warrant.
The trial court's action rests on the ground that the trooper's warrantless search of defendants' garbage was an unconstitutional privacy violation. The sole finding given by the trial court to support its determination was that the State had failed to carry its burden of proving that the garbage had been left for collection on public property.
Defendants' single-family dwelling is one of approximately ten attached row houses, each with separate front entrances. The building is separated from the curb by a sidewalk approximately eight feet in width; five or six steps with railings on each side run from the front door down to the sidewalk. In both searches, the trooper removed two plastic garbage bags from a plastic barrel located against the building under two utility meters and along the steps leading up to the front door. Conceiving that the State was obliged to show that the garbage had been put out for collection and that the containers were situated, at the time of the seizure, outside the curtilage of the house, the court found that the State had failed in both respects and that the garbage seizures were therefore unconstitutional.
The factors relied upon by the trial court did not control the disposition of the motion, and the court erred in concluding otherwise. The question presented was whether, under all the circumstances, defendants enjoyed a reasonable expectation of absolute privacy in the contents of their garbage containers.
No single factor determines whether an individual legitimately may claim under the Fourth Amendment that a place should be free of government intrusion not authorized by warrant. [Oliver v. United States, 466 U.S. 170, 177, 104 S.Ct. 1735, 1741, 80 L.Ed.2d 214, 223 (1984)].
We commend for the attention of trial courts, in such future cases, the "basic core of factors to be considered in determining whether a reasonable expectation of privacy exists" enumerated by the Alaska Supreme Court in Smith v. State, 510 P.2d 793, 797-798 (Alaska 1973), cert. den. sub nom. Smith v. *564 Alaska, 414 U.S. 1086, 94 S.Ct. 603, 38 L.Ed.2d 489 (1973). These are: "1. Where the trash is located, 2. Whether the building is multiple or single unit, 3. Who removed the trash, 4. Where the search of the trash takes place."
The evidence in its entirety compels the conclusion that defendants abandoned the contents of the garbage container so that they could no longer be said to retain any reasonable expectation that it would not be examined in the course of a police investigation motivated by reasonable suspicions of criminal misconduct. It was left on an exposed walkway and, though located a few feet back from that portion thereof customarily used by pedestrians, it was readily accessible to the public.
While the distinction between garbage placed for storage and garbage placed for collection might be significant to the question of abandonment in some cases, it is meaningless here where the container searched was located in an unenclosed area no more than eight feet from the curb. Whether defendant moved the containers across the sidewalk to the curb on collection day, or whether the collector took them from their position against the house, is of no consequence in determining whether defendants retained an expectation of absolute privacy that society is prepared to recognize as objectively reasonable. Nothing else in the evidence suggests a reasonable basis upon which defendants might expect that they retained such a privacy interest in the contents of the container. The evidence adduced was susceptible to no inference other than defendants' intention to abandon the garbage.
We find, however, that because of its patent staleness, the preliminary information which motivated the search did not, as a matter of law, supply the conditions necessary to justify a conscientious and experienced police officer in searching defendants' garbage at the time that he did. As we said earlier, despite the abandonment, defendants still retained a qualified privacy interest in the refuse.
*565 According to the trooper's affidavit of July 24, 1986, in support of the search warrant, his information concerning defendants' distribution of marijuana was received in January 1986. It was to the effect that defendants' activities took place during "the last several months prior to January 1986," and that it was in December 1985 that the informant observed the 50 pounds of marijuana in the bedroom. The garbage searches, however, did not occur until July 9 and July 23, 1986, seven months after the information was received.
Drawing upon cases concerned with "staleness" of facts supporting the issuance of a search warrant, we apply the proposition that the information upon which a searching officer acts must be at least relevant to the time of the search. See, State v. Blaurock, 143 N.J. Super. 476, 479 (App.Div. 1976); see also, State v. Novembrino, 105 N.J. 95, 124 n. 12 (1987). Here, the data given to the state trooper in January 1986 were already a month old when received. No explanation is given for the subsequent seven-month delay in acting upon them. Nothing suggests that they were still relevant at the time of the search. No surveillance was maintained and, for all that appears, no further investigational steps were taken even to bring the original information up to date.
Where an informant's tip is allowed to age without explanation, as happened here, the only conclusions which may be drawn are: (1) the information, when received, was not thought sufficiently reliable by a conscientious and experienced police officer to merit further attention; and (2) at the time of the searches in July 1986 the information was no longer germane and could not justify the search. Under the circumstances, we come to the conclusion that the garbage searches of July 9 and July 23, 1986, were unreasonable within the meaning of Article 1, paragraph 7 of the New Jersey Constitution. Since the search warrant of July 28, 1986, depended for its validity upon the results of an unreasonable warrantless search, the items seized under the warrant were properly suppressed for use as evidence at the trial.
*566 In State v. Pasanen the order under review denying suppression is affirmed. In State v. Hempele the order under review granting suppression is affirmed.
NOTES
[1] In State v. Mollica, 217 N.J. Super. 95, 97 (App.Div. 1987), certif. granted, 108 N.J. 214 (1987), we also suppressed evidence seized under a search warrant issued in reliance upon evidence illegally seized under State law without a warrant.
[2] Note, however, the Supreme Court's recent denial of certiorari in State v. Trahan, 229 Neb. 683, 428 N.W.2d 619 (1988), cert. den. sub. nom. Trahan v. Nebraska, ___ U.S. ___, 109 S.Ct. 561, 102 L.Ed.2d 586 (1988), where the Supreme Court of Nebraska denied constitutional protection to the contents of garbage cans "left for collection at a designated location and accessible to the public," even though it was necessary for the police to commit a trespass in order to conduct a search thereof. Trahan, 229 Neb. at 689, 428 N.W.2d at 623.