253 N.J. Super. 227 (1992)
601 A.2d 729
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
DAN ALFRED SKIDMORE AND WILLIAM THOMAS SKIDMORE, DEFENDANTS-RESPONDENTS. STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
SAMUEL OSCAR POFF, IV, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted November 6, 1991.
Decided January 17, 1992.
*228 Before Judges O'BRIEN, HAVEY and CONLEY.
*229 W. Michael Murphy, Jr., Morris County Prosecutor, attorney for appellant (Joseph Connor, Jr., Assistant Prosecutor, on the letter brief).
Wilfredo Caraballo, Public Defender, attorney for respondents Dan Alfred Skidmore and Samuel Oscar Poff, IV (David L. Kervick, Assistant Deputy Public Defender, on the brief).
Wilfredo Caraballo, Public Defender, attorney for respondent William Thomas Skidmore (Alfred V. Gellene, Assistant Deputy Public Defender, on the brief).
The opinion of the court was delivered by O'BRIEN, J.A.D.
Since the issue in both of these cases is the same, they are consolidated for the purpose of this opinion. In each case the State appeals from the dismissal of an indictment charging defendants with possession of a controlled dangerous substance (CDS).[1] We reverse.
In each case the police officers obtained a search warrant based in part upon the fruits of a search and seizure of defendants' garbage or trash bags placed outside their homes for collection.
In the Skidmore case, during the week of December 3, 1989, a citizen advised a prosecutor's office investigator of his suspicion that Dan Skidmore was distributing drugs from his residence in Dover. The suspicions were based on personal observations, i.e., the citizen observed frequent traffic to the home during the period from the summer of 1989 through December 1989. Cars would pull up in front of the home, blow their *230 horns, Dan Skidmore would run out, make an exchange with the occupants and then return to his home. On one occasion the citizen observed Skidmore holding a large amount of cash, although at the time the citizen believed Dan Skidmore was unemployed.
Based on this information, the investigator conducted "trash pulls" at Skidmore's residence on three occasions, December 6, December 20, and December 27, 1989. On each day the trash had been placed at curbside for pickup. Each of the three trash pulls produced evidence of drugs such as rolling papers, two marijuana seeds, a one-inch marijuana stalk, four marijuana cigarette roaches, and various other possible drug paraphernalia.
On January 3, 1990, a warrant was issued to search the residence. The judge found that the citizen's tip together with the results of the trash pulls provided probable cause to believe that drugs and/or related items were to be found inside the residence. Upon execution of the search warrant, the CDS sought to be suppressed was seized. Dan Skidmore and William Skidmore, who also lived at that address, were indicted for possession of a small amount of cocaine.
In the Poff case, on October 4, 1989, the county prosecutor's office received information from neighbors of Poff's residence in Dover that heavy traffic had been seen going in and out at all hours of the day and night. The neighbors believed this traffic resulted from marijuana sales at that address. On October 13, 1989, information was obtained from an unknown person, who claimed to have firsthand knowledge, that the residents of the first-floor apartment at the residence were generally in possession of large amounts of marijuana and were resupplied every few days. Investigation revealed that utilities for the first-floor apartment were billed to defendant Poff.
On November 15, 18 and 29, 1989, trash pulls were conducted on the regular trash pickup day. Each trash pull produced evidence of CDS such as a zip-lock baggy containing two *231 partially burnt marijuana cigarettes, seeds and marijuana stems, two empty packages of E-Z Wider rolling papers, and two marijuana cigarette clips. Surveillance on November 16 and November 22, 1989, appeared to support and be consistent with a conclusion that CDS was being distributed at the address. Based upon the initial information received, the results of the trash pulls, and the results of the surveillance, a search warrant based on probable cause was issued. The warrant was executed on December 1, 1989. Defendant was indicted for possession of more than fifty grams of marijuana and possession of more than one ounce of marijuana with intent to distribute, which had been seized when the warrant was executed.
Defendant Skidmore moved on November 19 and defendant Poff on December 24, 1990, to dismiss their indictments relying upon the decision of the New Jersey Supreme Court in State v. Hempele, 120 N.J. 182, 576 A.2d 793 (1990). After a hearing on January 25, 1991, the trial judge granted the motions to dismiss, concluding that the decision in Hempele should be applied retroactively to all cases awaiting trial.[2]
The Supreme Court concluded in State v. Hempele and State v. Pasanen, 120 N.J. 164, 576 A.2d 784 (1990), that the garbage or trash searches in both cases were valid under the Fourth Amendment to the United States Constitution based upon California v. Greenwood, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988). However, essentially embracing the reasoning of the dissenting opinion in Greenwood and in disagreement with the reasoning of the majority opinion, and admittedly in conflict with the holdings of virtually every other court that has considered *232 the issue,[3] the New Jersey Supreme Court decided that the warrantless searches without probable cause violated Article I, paragraph 7 of the New Jersey Constitution.
The State concedes the power of the New Jersey Supreme Court to afford our citizens greater protection against unreasonable searches and seizures than does the Fourth Amendment to the United States Constitution. See State v. Novembrino, 105 N.J. 95, 519 A.2d 820 (1987) (rejecting the concept of a good faith exception to the exclusionary rule); State v. Hunt, 91 N.J. 338, 450 A.2d 952 (1982) (protecting privacy interest in telephone toll billing records). However, the State contends that, when these warrantless garbage searches were conducted, the law in New Jersey, as stated in our opinions in Pasanen and Hempele, was,
[p]olice may search without a warrant through abandoned household refuse where they have information which, though less than probable cause for the issuance of a search warrant, may reasonably induce conscientious and experienced police officers to believe that their exploration will uncover evidence of crime. [State v. Pasanen and State v. Hempele, 229 N.J. Super. 553, 556, 552 A.2d 212 (App.Div. 1989), decided July 17, 1990.]
The same judge who decided these cases also decided State v. Pasanen in the Law Division on October 26, 1987. In reaching his decision in Pasanen, the judge concluded that, although placing a container of garbage out for collection does not necessarily intimate that the owner relinquishes all privacy interest in its contents, and thus it could not be searched arbitrarily, expectations of privacy were not justified as to searches made in furtherance of a police investigation grounded "in some plausible suspicion" of criminal wrongdoing, even though that plausible suspicion did not rise to the level of probable cause but was nevertheless sufficient to "alert them to the fact that there [was a] reasonable professional basis for investigation." Id. 229 N.J. Super. at 555, 552 A.2d 212. The *233 judge denied the motion to suppress, which we affirmed. Id. at 553-554, 552 A.2d 212.
In the companion case of State v. Hempele, a different judge had suppressed the evidence seized because the State had failed to demonstrate that the plastic pail from which the refuse was taken was located on public property at the time of the search. Although we affirmed the suppression order, we found the judge had erred in the reasons which he gave for suppressing the evidence. We found the searches unreasonable because the facts on which the warrantless garbage searches were made were stale. In affirming our decision in Hempele, 120 N.J. 182, 576 A.2d 793 the New Jersey Supreme Court found that the garbage searches violated Article I, paragraph 7 of the New Jersey Constitution, although not for the reasons given by the trial judge or by us.
Thus, the relevant timetable in the instant appeal starts with the trial judge's decision in State v. Pasanen in 1987, followed by the decision of the United States Supreme Court in California v. Greenwood on May 16, 1988, and our decision in State v. Pasanen and State v. Hempele on January 12, 1989, in which we specifically addressed the question of whether such warrantless garbage searches violated Article I, paragraph 7 of the New Jersey Constitution.
In that state of the announced law by the United States Supreme Court concerning the Fourth Amendment and our decision concerning Article I, paragraph 7 of the New Jersey Constitution, these warrantless garbage searches were conducted in November and December 1989. Thus, as found by the trial judge,
But I'll take it for present purposes that they [the police] did comply with the Pasanen decision at the sub-Supreme Court level as it was in force when the garbage pulls in our present case were actually made.
And that means, therefore, that in terms of police lawlessness or police, inappropriate police aggression or inappropriate insensitivity to the rights of people, there was nothing wrong with the police, with what the police did in this case from that point of view.

*234 They were acting in a restrained professional way and they were complying with the law as it then existed.
And so we do not have any motivation to exclude this evidence based on the need to control that kind of police misconduct.
Yet, the trial judge concluded that
The exclusionary rule in its simplest aspect is not really something designed to protect against police misconduct. It is designed to do that among other things.
But it's fundamentally designed to vindicate the substantive Constitutional right in question.
The judge thus correctly addressed the issue in terms of whether the Supreme Court opinions in Pasanen and Hempele should be applied retroactively to the warrantless garbage searches involved.[4] Noting the difficulty in determining the question of retroactivity, the motion judge decided that
[W]hen we're at the pretrial stage of pending cases, where there has been a timely assertion of rights and where there has been, by the time I get to rule or by the time the ruling judge gets to rule on the question there has been a definitive determination by the highest court of the state of what the Constitutional entitlement is. I think we should just follow that.
The judge then stated,
Nobody in the context of this case in terms of the judicial handling of this case has taken any position in reliance on any previous state of the law.
We disagree. It is obvious that the police action was taken in reliance upon the previous state of the law. Although the judge found that irrelevant, we reach a contrary conclusion based upon the law in New Jersey concerning retroactivity.
Since the Hempele court was silent on the issue, we must apply existing principles to ascertain whether the decision should be applied retroactively to cover the warrantless garbage searches in this case.[5] The threshold issue in any retroactivity *235 decision is whether a new rule of law has been announced. State v. Burstein, 85 N.J. 394, 403, 427 A.2d 525 (1981); see also State v. Harvey, 121 N.J. 407, 421, 581 A.2d 483 (1990), cert. denied, ___ U.S. ___, 111 S.Ct. 1336, 113 L.Ed.2d 268 (1991). We are satisfied that the Hempele decision announced a new rule of law. Prior to the Supreme Court decision in Hempele, the Appellate Division, as well as virtually every other court that had considered the question, had held that warrantless searches of household trash left on the curb was permissible. State v. Pasanen, 229 N.J. Super. 553, 552 A.2d 212 (App.Div. 1989); State v. Hempele, 120 N.J. at 223-225, 576 A.2d 793. In the face of this impressive weight of nationwide authority, including the United States Supreme Court, the New Jersey Supreme Court disagreed. Id. at 225, 576 A.2d 793. In our judgment, in reaching that conclusion, the Hempele court announced a new rule of law requiring police to obtain a search warrant before searching discarded trash. Prior to Hempele there was no such requirement. This conclusion is supported by other decisions of the Supreme Court such as State v. Hunt, supra, where a decision to extend the expectation of privacy to telephone toll-billing records was held to be a new rule of law. Likewise, in State v. Burstein, supra, a decision requiring suppression of wiretap evidence based on sealing delays was also held to be a new rule of law. The Court also held in State v. Lark, 117 N.J. 331, 567 A.2d 197 (1989), that the rule announced in State v. Howard, 110 N.J. 113, 539 A.2d 1203 (1988), requiring that a person pleading guilty to a sex crime must be advised that they could be *236 sentenced under the Criminal Code, N.J.S.A. 2C:47-1 to 47-7, and spend more time in custody than if sentenced to state prison, was a new rule of law.
Since we conclude that Hempele announced a new rule of law, an analysis of retroactivity must be undertaken. In determining whether the new rule will be applied retroactively or prospectively only, we must weigh (1) the purpose of the rule and whether it would be furthered by a retroactive application; (2) the degree of reliance placed on the old rule by those who administered it; and (3) the effect a retroactive application would have on the administration of justice. State v. Nash, supra, 64 N.J. at 471, 317 A.2d 689.
Where a new rule is an exclusionary rule, meant solely to deter illegal police conduct, the new rule is virtually never given retroactive effect. The reason is that the deterrent purpose of such a rule would not be advanced by applying it to past misconduct. State v. Burstein, 85 N.J. at 406, 427 A.2d 525; see also, State v. Carpentieri, 82 N.J. 546, 549, 414 A.2d 966 (1980); State v. Howery, 80 N.J. 563, 569, 404 A.2d 632 (1979), cert. denied, 444 U.S. 994, 100 S.Ct. 527, 62 L.Ed.2d 424 (1979); see, e.g., State v. Hunt, 91 N.J. at 348-349, 450 A.2d 952 (new rule requiring court order and probable cause for telephone toll-billing records applied prospectively only); State v. Young, 87 N.J. 132, 139, 432 A.2d 874 (1981) (new rule restricting warrantless searches of luggage in automobiles applied prospectively only); State v. Catania, 85 N.J. 418, 446, 427 A.2d 537 (1981) (new rule requiring both extrinsic and intrinsic minimization in wiretap cases applied prospectively only); State v. Burstein, supra, 85 N.J. at 411, 427 A.2d 525 (new rule requiring suppression for sealing delays in wiretap cases applied prospectively only); State v. Carpentieri, supra, 82 N.J. at 548, 414 A.2d 966 (new rule outlawing random motor vehicle stops applied prospectively only); State v. Howery, supra, 80 N.J. at 571, 404 A.2d 632 (new rule dealing with attacks on search warrants applied prospectively only); State v. Johnson, *237 68 N.J. 349, 354, 346 A.2d 66 (1975) (new rule limiting consent searches applied prospectively only).
The exclusionary rule is designed primarily to deter police misconduct. Delguidice v. N.J. Racing Com'n, 100 N.J. 79, 85, 494 A.2d 1007 (1985), but see State v. Novembrino, 105 N.J. 95, 519 A.2d 820 (1987), where the Court said,
[T]he exclusionary rule['s] function is not merely to deter police misconduct. The rule also serves as the indispensable mechanism for vindicating the constitutional right to be free from unreasonable searches. [Id. at 157, 519 A.2d 820]
This conclusion was reached in deciding not to adopt in New Jersey the good faith exception to the rule excluding evidence seized pursuant to a search warrant issued without probable cause, as decided by the United States Supreme Court in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3430, 82 L.Ed.2d 677 (1984).
In this case, the State does not seek to admit the fruits of unlawful police conduct since the police fully complied with the law in effect at the time they acted. Thus, the first factor, which is often the pivotal consideration, Burstein, 85 N.J. at 406, 427 A.2d 525, indicates that retroactivity of the Hempele decision is not appropriate in this case.
Likewise, the second factor concerning the degree of reliance placed on the old rule also weighs against retroactivity. Obviously, the police could properly rely upon the Greenwood opinion as to the Fourth Amendment and our decision in Pasanen as to Article I, paragraph 7 of the New Jersey Constitution in concluding that, where they had information which, although less than probable cause for the issuance of the search warrant, may reasonably induce conscientious and experienced police officers to believe that their exploration would uncover evidence of crime, they may search and seize garbage put out for collection. Although it appears that the police had such information in both these cases, the matter will be remanded for a definitive examination of that question.
*238 On the basis of the record before us, we are unable to determine what effect retroactive application of the new rule would have on the administration of justice. Notwithstanding our inability to weigh this factor, the combined weight of the first two factors would clearly outweigh the third factor even if retroactivity would have no appreciable effect on the administration of justice.
Finally, it is necessary that we address the question of whether the new rule should have limited retroactivity to all cases pending on direct review or not yet final, such as the United States Supreme Court decided in Griffith v. Kentucky, 479 U.S. 314, 327, 107 S.Ct. 708, 715, 93 L.Ed.2d 649, 661 (1987). The New Jersey Supreme Court has held that if the new rule it announced is based on federal law, then the Griffith rule of retroactivity will apply, State v. Harvey, supra, 121 N.J. at 422-423, 581 A.2d 483. However, if the new rule is based on state law, the traditional three-part test is used to determine retroactivity. In Lark, by application of the three-part test, the Court concluded that, while the new rule was a new application of accepted legal principles, Lark, supra, 117 N.J. at 339, 567 A.2d 197, nonetheless it should be given limited retroactivity to the defendant in that case and to cases pending in which the defendant has not yet exhausted all avenues of direct review. Id. at 341, 567 A.2d 197. For that proposition the case cites Burstein. However, in Burstein, our Supreme Court specifically held that in cases where the new rule is an exclusionary rule, meant solely to deter illegal police conduct, the new rule is virtually never given retroactive effect. Burstein, supra, 85 N.J. at 406, 427 A.2d 525. Thus, we conclude that the rule announced by our Supreme Court in Hempele and Pasanen should not be given even limited retroactive effect.
Reversed and remanded to the trial judge for further proceedings to determine whether the police had information sufficient to induce conscientious and experienced police officers to believe that their exploration would uncover evidence of crime, *239 the rule set forth by the Appellate Division in State v. Pasanen. We do not retain jurisdiction.
NOTES
[1] Defendant Poff was also charged with possession with intent to distribute marijuana in a quantity of one ounce or more.
[2] Although the motions were to dismiss the indictments, the trial judge correctly concluded that the appropriate remedy was suppression of the evidence. However, in view of the decision to suppress, the prosecutor consented to the dismissal of the indictments.
[3] The Hawaiian Constitution prohibits warrantless garbage searches. See State v. Tanaka, 67 Haw. 658, 701 P.2d 1274 (1985).
[4] The Supreme Court only found the searches to be constitutionally infirm under the New Jersey Constitution, concluding that there was no impediment to the police seizing garbage bags left out for collection. [120 N.J. at 223, 576 A.2d 793]
[5] The Supreme Court has observed that it has four options to determine the retroactivity of a decision: (1) make the new rule of law purely prospective, applying it only to cases whose operative facts arise after the new rule is announced; (2) apply the new rule to future cases and to the parties in the case announcing the new rule, while applying the old rule to all other pending and past litigation; (3) grant the new rule limited retroactivity, applying it to cases in (1) and (2) as well as to pending cases where the parties have not yet exhausted all avenues of direct review; and finally, (4) give the new rule complete retroactive effect, applying it to all cases, even those where final judgments have been entered and all avenues of direct review have been exhausted. State v. Burstein, 85 N.J. 394, 402-403, 427 A.2d 525 (1981); State v. Nash, 64 N.J. 464, 468-470, 317 A.2d 689 (1974).