RUCKER, Justice,
concurring in result in part and dissenting in part.
I agree that the trial court correctly denied Membres’ motion to suppress. On this point I concur .with the majority opinion. But the majority charts new territory to this Court’s longstanding jurisprudence on the question of retroactivity. I would adhere to established precedent and as a result apply Litchfield v. State, 824 N.E.2d 356 (Ind.2005), retroactively. On this issue I respectfully dissent.
Discussion
I.
In determining whether a new rule of state criminal procedure applies retroactively, the majority relies on Enlow v. State, 261 Ind. 348, 303 N.E.2d 658 (1973). In that case this Court applied a three-pronged test: “(a) the purpose to be served by the new standards!,] (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.” Op. at 272 (quoting id. at 659). But Enlow quoted Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), for this three-pronged test. And on this precise point Stovall has been overruled by Griffith v. Kentucky, 479 U.S. 314, 321, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (citing Stovall among other cases and declaring, “[Retro-activity must be rethought.”). In essence the majority today adopts as the Indiana rule long abandoned federal precedent on the issue of retroactivity. I see no reason to travel this path.
In a related vein, and perhaps more importantly, although this Court has acknowledged its independence to fashion its own rule of retroactivity, it has declined to do so. Instead this Court has adopted as this state’s retroactivity rule the same rule articulated by the United States Supreme Court in Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), as refined in Penny v. Lynaugh, 492 U.S. 302, 313-14, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). See Daniels v. State, 561 N.E.2d 487, 489 (Ind.1990). It is true that Daniels involved a case on collateral review, “[W]e elect to follow the approach of Teag-ue and Penry in addressing the retroactivity of new law to cases on review pursuant to petitions for post-conviction relief under Indiana procedure.” Id. But we have consistently applied the Teague/Penry rule to cases pending on direct appeal as well. See, e.g., Coleman v. State, 558 N.E.2d 1059, 1061 (Ind.1990) (The new rule applies “to the direct appeal of a trial occurring before [the new rule was] decided so long as the appellant has preserved [the issue for appeal] by objecting at trial.”); Pirnat v. State, 607 N.E.2d 973, 974 (Ind.1993) (Decision announcing new rule applicable to defendant and others “whose cases were pending on direct appeal at the time [the case deciding the new rule] was decided....”).
Essentially, until today Indiana’s rule on retroactivity — which is the same as the federal rule — was well established, “[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a ‘clear break’ with the past.” Smylie v. *279 State, 823 N.E.2d 679, 687 (Ind.2005),[1] cert. denied, 546 U.S. 976, 126 S.Ct. 545, 163 L.Ed.2d 459 (2005) (quoting Griffith, 479 U.S. at 328, 107 S.Ct. 708).
To support its abandonment of this state’s long-standing authority on retroac-tivity the majority says that a different rule should apply where the exclusionary rule is at stake. I make two observations. First, the authority on which the majority relies[2] arises out of a jurisdiction that apparently has rejected the Teague retro-activity rule. See, e.g., State v. Knight, 145 N.J. 233, 678 A.2d 642, 652 (1996) (“Although we have noted our agreement with some of the principles underlying Teague, we have continued to determine the retro-activity of state rules of law under the Linkletter [v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) ] test.”); see also State v. Purnell, 161 N.J. 44, 735 A.2d 513, 521 (1999) (declaring that the “applicable state and federal retroactivity standards differ.”). The majority counters, “New Jersey’s retroactivity rules are more permissive, not more restrictive, than Teague.” Op. at 273. This may be true. But as demonstrated by two other cases handed down today, an application of the majority’s new rule results in sustaining the trial court’s denial of a motion to suppress evidence, while the opposite would be true if this state’s existing rule were applied. See Bowles v. State, No. 49S04-0708-CR-310, 891 N.E.2d 30, 32-33 (Ind.2008) (Rucker, J., dissenting); Belvedere v. State, 48S05-0806-CR-370, 889 N.E.2d 286, 288 (Ind.2008) (Rucker, J., dissenting). Second, contrary to the majority’s claim, neither this Court nor the federal circuit courts have been hesitant about applying the Teague retroactivity rule to cases in which the exclusionary rule was at stake. See, e.g., Wilson v. State, 514 N.E.2d 282, 284 (Ind.1987) (declaring that the resolution of whether the new rule on the use of a defendant’s post-Mircroda silence is retroactive “is controlled by the recent decision in Griffith v. Kentucky,” which was later incorporated into the Teague analysis); Bintz v. Bertrand, 403 F.3d 859, 865-67 (7th Cir.2005) (applying Teague to determine whether the exclusion of testimonial out-of-court statements applies retroactively); Mungo v. Duncan, 393 F.3d 327, 335-36 (2d Cir.2004) (same); Brown v. Uphoff 381 F.3d 1219, 1225-27 (10th Cir.2004) (same); Winsett v. Washington, 130 F.3d 269, 279-80 (7th Cir.1997) (applying Teague to determine whether Illinois courts acted reasonably by not retroactively applying Miranda).
In sum, controlling authority simply does not support the majority’s rationale for crafting a different rule of retroactivity applicable only to exclusionary rule cases. On this issue I respectfully dissent.
II.
There appears to be no doubt that Litchfield represents a new rule of criminal procedure. The majority acknowledges as much, noting that Litchfield “ ‘reshaped’ the understanding of what constitutes a reasonable warrantless trash search.” Op. at 271. I agree. And because Membres’ case was not yet final *280 when Litchfield was decided,[3] I would apply to this case the new rule of criminal procedure we announced in Litchfield.
Among other things, Litchfield determined that it is not reasonable for the police to search indiscriminately through people’s trash. Litchfield, 824 N.E.2d at 363. In order for a search or seizure of a person’s trash to be reasonable, two requirements must be met. First, trash must be retrieved in substantially the same manner as the trash collector would take it. Id. Second, the officer must possess an “articulable individualized suspicion” of illegal activity, “essentially the same as is required for a ‘Terry stop’ of an automobile.” Id. at 364. Here, the first element was met. Officer Wildauer recovered the trash bags placed along the street for pickup on the normal day for trash collection and without stepping onto Mem-bres’ property.
We turn then to whether Officer Wil-dauer had an articulable individualized suspicion of illegal activity at Membres’ home to justify searching his trash. If the evidence fails to establish this requirement, then the officer could not have validly found the rolling papers and burnt marijuana cigarettes in the trash and could not have relied upon that evidence to establish probable cause for a search warrant for Membres’ residence.
At the hearing on the motion to suppress, Officer Wildauer testified that an informant told him that Membres was dealing drugs from his house. According to the officer, “I’ve been using the informant for quite some time[;] he’s always given me very good solid information that’s turned into to [sic] be factual, reliable involved in other cases.” Tr. at 17. When asked the number of times the informant had given him information, Officer Wildauer responded, “I’d say an access [sic] of forty (40) to fifty (50) times.” Id. And that he “believed” that the information resulted in convictions “more than three” times. Id. at 17-18. Officer Wil-dauer also testified that other surveillance officers had “seen a vehicle that I commonly see ... over there[,] a green Corvette convertible that I had associated with someone who’s another target of mine I suspect of being a drug dealer.” Id. at 18. When asked specifically what the informant told him, Officer Wildauer testified “[the informant] saw the other person over there and ... according to him he’s a drug dealer and said that they were dealing drugs. He just gave me information they were dealing drugs from the house.” Id. Officer Wildauer’s testimony continued, “[H]e was pretty sure they were selling marijuana out of there. The other target is known for his marijuana dealings.” Id. at 19. “He just thought there were large quantities. He didn’t specify to me the quantity he just said very large and suspected an excess of twenty (20) pounds of marijuana.” Id.
“Reasonable suspicion is a less demanding standard than probable cause[,] not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.” Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). Even though different, reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of relia *281 bility. Id. “Both factors — quantity and quality — are considered in the ‘totality of the circumstances — the whole picture that must be taken into account when evaluating whether there is reasonable suspicion.’ ” Id. (citation omitted).
Unlike a tip from an anonymous informant, which is rarely sufficient, a tip from an identified and known informant can provide reasonable suspicion of criminal activity to justify a Terry stop when there are sufficient indicia of reliability. See id. at 330-31, 110 S.Ct. 2412 (reiterating that an unverified tip from a known informant was sufficiently reliable to justify a Terry stop, although it might not have been reliable enough to establish probable cause); Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (Approving a Terry stop on the basis of a known informant who had given reliable information in the past, the Court stated a tip from a known informant is a “stronger case” than an anonymous telephone tip.). The indicia of reliability for a tip can be established in a number of ways, including whether: (1) the informant has given correct information in the past, (2) independent police investigation corroborates the informant’s statements, (3) some basis for the informant’s knowledge is demonstrated, or (4) the informant predicts conduct or activity by the suspect that is not ordinarily easily predicted. State v. Spillers, 847 N.E.2d 949, 954 (Ind.2006).
In this case an informant told Officer Wildauer that Membres was dealing marijuana from his home. The reliability of the informant’s tip was established by Officer Wildauer’s testimony that the informant had given the officer factual and reliable information in the past — in excess of forty to fifty times — and that the information had resulted in convictions on more than three occasions. Combined with the surveillance team’s observation that an automobile belonging to a suspected drug dealer was parked at Membres’ house, the informant’s tip, although not sufficient to establish probable cause for the issuance of a search warrant, was enough under the totality of the circumstance to provide the police with reasonable suspicion that “criminal activity may be afoot.” Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Thus, Officer Wil-dauer acted well within the dictates of Litchfield to conduct a warrantless search of Membres’ trash. Accordingly, the trial court properly denied Membres’ motion to suppress. On this issue I therefore concur in result.

. As a matter of grace in Smylie we held that "a defendant need not have objected at trial in order to raise a Blakely claim on appeal inasmuch as not raising a Blakely claim before its issuance would fall within the range of effective lawyering.” Smylie, 823 N.E.2d at 691. But cf. Coleman, 558 N.E.2d at 1061 (stating the general requirement that an appellant must object at trial to preserve the issue for appeal).

. Specifically, the majority cites to State v. Skidmore, 253 N.J.Super. 227, 601 A.2d 729 (App.Div.1992). Op. at 273.

. The record shows that the search of Mem-bres' trash was conducted March 10, 2005. App. at 43. Litchfield was decided March 24, 2005. And thereafter on October 14, 2005, Membres filed his notice of appeal. App. at 13.