SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**State v. Timothy Adkins (A-91-13) (073803)**

**Argued December 3, 2014 -- Decided May 4, 2015**

**LaVECCHIA, J., writing for a unanimous Court.**

In this appeal, the Court considers the application of the United States Supreme Court's decision in Missouri v. McNeely, ___ U.S. ___, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013), to a case involving a blood draw, for purposes of determining blood alcohol content (BAC), that took place before the McNeely decision was issued.

In the early morning hours of December 16, 2010, defendant, Timothy Adkins, was involved in a single-car accident that resulted in injuries to his two passengers. Based on his performance on a series of field sobriety tests conducted at the scene of the accident, defendant was arrested on suspicion of Driving While Intoxicated (DWI) at approximately 2:27 a.m. Defendant was transported to the West Deptford Police Department and was advised of his Miranda rights; he invoked his right to counsel. Although Alcotest equipment was present, no breathalyzer test was administered at headquarters. Police conveyed defendant to the hospital, and the police obtained defendant's BAC test results from a sample, drawn by hospital personnel at police direction, without the police first having secured a warrant or defendant's prior written consent. Defendant was issued summonses for DWI, careless driving, and possession of an open container in a motor vehicle. Subsequently, a grand jury also charged him with fourth-degree assault by auto for recklessly operating a vehicle while under the influence of alcohol and causing bodily injury.

On April 17, 2013, the United States Supreme Court issued its opinion in McNeely, which held that the natural metabolism of alcohol in an individual's bloodstream does not constitute a per se exigency under a Fourth Amendment search and seizure analysis. 133 S. Ct. at 1568. In light of McNeely, on April 22, 2013, defendant filed a pre-trial motion to suppress the blood test results. Following a hearing at which only defendant testified, the court granted defendant's motion, applying McNeely and finding that the police did not demonstrate exigent circumstances before securing a sample of defendant's blood without a warrant.

The State appealed, and the Appellate Division reversed. 433 N.J. Super. 479 (App. Div. 2013). The panel explained that, prior to McNeely, New Jersey courts, including the Supreme Court, had cited the United States Supreme Court's decision in Schmerber v. California, 384 U.S. 757 (1966), as support for the warrantless taking of blood samples from suspected intoxicated drivers, so long as the search was supported by probable cause and the sample was obtained in a medically reasonable manner. The panel thus reasoned that McNeely had worked a dramatic shift in the State's Fourth Amendment jurisprudence and created a new rule of criminal procedure. The panel acknowledged that McNeely ordinarily would be applied retroactively to all cases pending on direct review, but noted that federal law generally does not apply the exclusionary rule when police conduct a search in good faith reliance on previously binding precedent, and concluded that the exclusionary rule should not be applied here.

The Court granted defendant's petition for certification. 217 N.J. 588 (2014).

**HELD**: McNeely's pronouncement on the Fourth Amendment's requirements must apply retroactively to cases that were in the pipeline when McNeely was issued. Accordingly, the Appellate Division's judgment is reversed. The matter is remanded to allow the State and defendant the opportunity to re-present their respective positions on exigency in a hearing on defendant's motion to suppress the admissibility of the blood test results. In that hearing, potential dissipation of the evidence may be given substantial weight as a factor to be considered in the totality of the circumstances. The reviewing court must focus on the objective exigency of the circumstances faced by the officers.

1. In the context of the exigent-circumstances exception, the United States Supreme Court addressed the constitutionality of a warrantless blood draw from a suspected drunk driver in its 1966 decision in Schmerber, 384 U.S. 757. In finding the warrantless blood draw constitutionally permissible, the Court concluded that although a warrant is typically required for the taking of blood, the officer might have reasonably believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant threatened the destruction of

evidence. The Court further added that defendant's blood was drawn by a reasonable method and in a reasonable manner. Id. at 770-71. (pp. 13-14)

2. Following Schmerber, courts were not in agreement on whether the decision created a rule that the dissipation of alcohol constituted a per se exigency justifying a warrantless search. To resolve the split in authority, the Supreme Court granted certiorari in McNeely, where the State of Missouri argued that "the fact that alcohol is naturally metabolized by the human body creates an exigent circumstance in every case." 133 S. Ct. at 1567. The Supreme Court explained that Schmerber never created a per se rule but, instead, had incorporated a totality-of-the-circumstances test. Id. at 1558-60. Thus, in McNeely, the Court clarified that the dissipation of alcohol from a person's bloodstream is not the beginning and end of the analysis for exigency in all warrantless blood draws involving suspected drunk drivers. Rather, courts must evaluate the totality of the circumstances in assessing exigency, one factor of which is the human body's natural dissipation of alcohol. (pp. 15-16)

3. The question before the Court is McNeely's application to the warrantless drawing of defendant's blood, which occurred prior to McNeely's issuance. In State v. Wessells, 209 N.J. 395 (2012), the Court noted that "federal retroactivity turns on whether a new rule of law has been announced, coupled with an analysis of the status of the particular matter, that is, whether it is not yet final, is pending on direct appeal, or is being collaterally reviewed." Id. at 411. The Court recognized that if a new rule has been established "for the conduct of criminal prosecutions" it will "be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." Id. at 412 (quoting Griffith v. Kentucky, 479 U.S. 314, 328 (1987)). Accordingly, in Wessells, the Court applied a new rule of law that had been established in a United States Supreme Court decision to a case pending review in New Jersey at the time the decision was handed down. As the Appellate Division found, and defendant and the State acknowledge, this case calls for a similar result. McNeely represents new law settling an area of criminal practice, thus, under federal retroactivity law, the decision deserves pipeline retroactive application. The United States Supreme Court has pronounced the standard to be applied under the Fourth Amendment to warrantless searches involving blood draws of suspected DWI drivers and, under Supremacy Clause principles, this Court is bound to follow it as the minimal amount of constitutional protection to be provided. Therefore, in accord with Wessells, McNeely applies retroactively to cases that were in the pipeline when it was decided. (pp. 16-18)

4. The Court next considers whether the exclusionary rule should have any applicability in suppressing defendant's blood test results when the police merely followed an asserted, commonly held understanding of Schmerber's requirements in this State. Our State declined to recognize the exception to the exclusionary rule that was first established in United States v. Leon, 468 U.S. 897 (1984), and has consistently rejected a good faith exception to the exclusionary rule. This matter deals specifically with police conduct in reliance on case law in New Jersey that led law enforcement to the reasonable conclusion that the natural dissipation of alcohol from the human body created exigency sufficient to dispense with the need to seek a warrant. Although the Court's decisions never expressly pronounced an understanding of Schmerber that per se permitted warrantless blood draws in all cases on the basis of alcohol dissipation alone, case law contains language that provides a basis for such a belief. The United States Supreme Court has now clarified the appropriate test to be applied to warrantless blood draws, and this Court adheres to that test without any superimposed exception. (pp. 19-23)

5. In these pipeline cases, law enforcement should be permitted on remand to present their basis for believing that exigency was present in the facts surrounding the evidence's potential dissipation and police response under the circumstances to the events involved in the arrest. The exigency in these circumstances should be assessed in a manner that permits the court to ascribe substantial weight to the perceived dissipation that an officer reasonably faced. Reasonableness of officers must be assessed in light of the existence of the McNeely opinion. But, in reexamining pipeline cases when police may have believed that they did not have to evaluate whether a warrant could be obtained, based on prior guidance from the Court that did not dwell on such an obligation, reviewing courts should focus on the objective exigency of the circumstances that the officer faced in the situation. (pp. 23-24)

   The judgment of the Appellate Division is **REVERSED** and the matter is **REMANDED** to the trial court for further proceedings consistent with this opinion.

   **CHIEF JUSTICE RABNER; JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE LaVECCHIA's opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

TIMOTHY ADKINS,

    Defendant-Appellant.


       Argued December 3, 2014 – Decided May 4, 2015

       On certification to the Superior Court,
       Appellate Division, whose opinion is
       reported at 433 N.J. Super. 479 (App. Div.
       2013).

       Richard F. Klineburger, III, argued the
       cause for appellant (Klineburger and Nussey,
       attorneys; Mr. Klineburger, Carolyn G.
       Labin, and Rebecca L. Kolsky, on the
       briefs).

       Ronald Susswein, Assistant Attorney General,
       argued the cause for respondent (John J.
       Hoffman, Acting Attorney General of New
       Jersey, attorney).

       Jeffrey Evan Gold argued the cause for
       amicus curiae New Jersey State Bar
       Association (Paris P. Eliades, President,
       attorney; Mr. Eliades, of counsel; Mr. Gold
       and Thomas M. Cannavo, on the brief).

    JUSTICE LaVECCHIA delivered the opinion of the Court.

    We granted certification in this matter to address the

application of the United States Supreme Court's decision in

Missouri v. McNeely, ___ U.S. ___, 133 S. Ct. 1552, 185 L. Ed.

2d 696 (2013), to a case involving a blood draw, for purposes of determining blood alcohol content (BAC), that took place before the McNeely decision was issued.

Police arrested defendant, Timothy Adkins, on suspicion of drunk driving after his single-vehicle car crash caused injuries to his passengers and he failed field sobriety tests. The police obtained defendant's BAC test results from a sample, drawn by hospital personnel at police direction, without the police first having secured a warrant or defendant's prior written consent.

Following issuance of the United States Supreme Court's decision in McNeely, supra, which held that "in drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant," ___ U.S. at ___, 133 S. Ct. at 1568, 185 L. Ed. 2d at 715, defendant sought suppression of his BAC results. After a hearing in which only defendant testified, the court applied McNeely and excluded defendant's blood test results. On appeal, the Appellate Division reversed, declining to apply the exclusionary rule when officers relied on pre-McNeely New Jersey case law that had permitted warrantless blood draws based on the exigency inherent in the human body's natural dissipation of alcohol.

Consistent with our decision in State v. Wessells, 209 N.J. 395 (2012), we conclude that McNeely's pronouncement on the Fourth Amendment's requirements must apply retroactively to cases that were in the pipeline when McNeely was issued. We are constrained to adhere to the McNeely Court's totality-of-the-circumstances approach notwithstanding that our case law, like that of many sister states, had provided de facto, if not de jure, support for law enforcement to believe that alcohol dissipation in and of itself supported a finding of exigency for a warrantless search of bodily fluids in suspected driving-under-the-influence cases.

Because McNeely must apply retroactively to all cases, federal or state, pending on direct review at the time of that decision, we must reverse the Appellate Division judgment. However, we remand to allow the State and defendant the opportunity to re-present their respective positions on exigency in a hearing on defendant's motion to suppress the admissibility of the blood test results. We further hold that, in that hearing, potential dissipation of the evidence may be given substantial weight as a factor to be considered in the totality of the circumstances. In reexamining this matter, in which law enforcement may have relied on prior guidance from our Court that did not identify an obligation to evaluate whether a warrant could be obtained, we direct the reviewing court to

3

focus on the objective exigency of the circumstances faced by the officers.

I.

In the early morning hours of December 16, 2010, defendant was involved in a single-car accident that resulted in injuries to defendant's two passengers. Based on his performance on a series of field sobriety tests conducted at the scene of the accident, defendant was arrested on suspicion of Driving While Intoxicated (DWI) at approximately 2:27 a.m. Defendant was transported to the West Deptford Police Department and was advised of his Miranda[1] rights; he invoked his right to counsel. We understand from this record that although Alcotest equipment was present, no breathalyzer test was administered at headquarters. The record is not clear as to why that is so.

What we do know is that police personnel conveyed him to Underwood Memorial Hospital so that a blood sample could be obtained. At police request, hospital staff drew defendant's blood at 4:16 a.m. The record does not reveal any objection by defendant to the invasive procedure. The requesting police officer, a hospital nurse, and defendant each signed the

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

4

Certificate of Request to Withdraw a Specimen, but defendant's signature was affixed two minutes after the blood was drawn.[2]

Defendant was issued summonses for DWI, N.J.S.A. 39:4-50; careless driving, N.J.S.A. 39:4-97; and possession of an open container in a motor vehicle, N.J.S.A. 39:4-51a. On August 3, 2011, a grand jury also charged defendant with fourth-degree assault by auto, N.J.S.A. 2C:12-1(c)(2), for recklessly operating a motor vehicle while under the influence of alcohol and causing bodily injury.

On April 17, 2013, the United States Supreme Court issued its opinion in McNeely, supra, which held that the natural metabolism of alcohol in an individual's bloodstream does not constitute a per se exigency under a Fourth Amendment search and seizure analysis. ___ U.S. at ___, 133 S. Ct. at 1568, 185 L. Ed. 2d at 715. In light of McNeely, on April 22, 2013, defendant filed the pre-trial motion to suppress the blood test results that is at the center of this appeal.[3] Following a hearing at which only defendant testified, the court granted defendant's motion, finding that the police did not demonstrate

---

[2] We note that no argument has been advanced before this Court that defendant consented to the blood draw.

[3] In addition, defendant alleged a violation of his speedy trial rights. That motion was denied and is not before this Court. Also, we note that a previously filed motion to suppress the blood test results based on discovery issues had been denied.

exigent circumstances before securing a sample of defendant's blood without a warrant.

The State appealed, and the Appellate Division reversed. State v. Adkins, 433 N.J. Super. 479 (App. Div. 2013). The panel explained that, prior to McNeely, New Jersey courts, including this Court, had cited the United States Supreme Court's prior decision in Schmerber v. California, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966), as support for the warrantless taking of blood samples from suspected intoxicated drivers, so long as the search was supported by probable cause and the sample was obtained in a medically reasonable manner. Id. at 482-83. The panel reasoned therefore that McNeely had worked a dramatic shift in this State's Fourth Amendment jurisprudence and created a new rule of criminal procedure. Id. at 484. The Appellate Division acknowledged that McNeely ordinarily would be given "pipeline retroactivity" and would be applied retroactively to all cases, federal or state, pending on direct review. Ibid. However, citing Davis v. United States, ___ U.S. ___, ___, 131 S. Ct. 2419, 2434, 180 L. Ed. 2d 285, 302 (2011), the panel noted that federal law generally does not apply the exclusionary rule when police conduct a search in good faith reliance on previously binding precedent. Id. at 484-85. Concluding that defendant's blood sample would not be suppressed under federal law, the panel determined that

6

> the real issue here is whether, given the federal retroactivity requirement, we should, as the State argues, apply an approach analogous to that set forth in Davis, or whether, as defendant argues, the result here is dictated by State v. Novembrino, 105 N.J. 95, 157-59 (1987), which rejected a "good faith" exception to the application of the exclusionary rule.

> [Id. at 488.]

Ultimately, the panel held that the exclusionary rule should not be applied in this matter. Id. at 492-93. In its reasoning, the panel relied on State v. Harris, 211 N.J. 566 (2012), as permitting exceptions to the exclusionary rule in limited circumstances. Id. at 490-91. The panel emphasized that, as in Harris, the exclusionary rule's application would not serve as a deterrent in this case because the police relied upon valid precedent when conducting the search. Id. at 491.

Defendant filed a petition for certification, which was granted by this Court. 217 N.J. 588 (2014). We also granted amicus curiae status to the New Jersey State Bar Association (NJSBA).

## II.

### A.

Defendant argues that the Appellate Division misconstrued New Jersey law when it found that McNeely dramatically changed this State's Fourth Amendment jurisprudence. According to defendant, neither federal nor New Jersey law recognized a per

7

se exigency exception for warrantless blood draws of drunk driving suspects pre-McNeely; thus, the totality-of-the-circumstances test always has been the appropriate standard. Nevertheless, citing Wessells, supra, 209 N.J. at 411-12, defendant adds that federal retroactivity principles require application of McNeely to defendant's case.

Importantly, on the issue of McNeely's retroactive application, defendant and the State agree.

Consistent with his view of the prior state of federal and New Jersey law governing warrantless blood draws on the basis of alcohol dissipation alone, defendant argues that the officers were not following precedent when they procured his blood. Therefore, defendant contends that the Appellate Division erred in declining to apply the exclusionary rule in this setting. He asserts that Davis, supra, ___ U.S. ___, 131 S. Ct. 2419, 180 L. Ed. 2d 285, is inapplicable, drawing support for that argument from the Supreme Court's post-McNeely remand in Brooks v. Minnesota, ___ U.S. ___, 133 S. Ct. 1996, 185 L. Ed. 2d 863 (2013). That case involved a conviction based on a pre-McNeely warrantless blood test of a drunk driving suspect. Defendant points out (1) that the Supreme Court's remand signaled its intent that McNeely be applied retroactively and (2) that the Court remanded without any mention that Davis applied.

8

Finally, defendant asserts that the Appellate Division's decision is inconsistent with Novembrino, supra, 105 N.J. 95, in which this Court declined to recognize a good faith exception to the exclusionary rule. Defendant argues that applying the exclusionary rule here furthers the rule's purpose by protecting an individual's Fourth Amendment rights and preserving judicial integrity through the exclusion of illegally obtained evidence. Defendant distinguishes Harris, supra, 211 N.J. 566, noting that Harris did not involve a warrantless search, and emphasizes this Court's statement in that case that it was not retreating from Novembrino's rejection of a good faith exception to the exclusionary rule.

B.

The State concedes that McNeely should be given pipeline retroactive application. The State's arguments focus instead on why it believes the exclusionary rule should not be applied to suppress defendant's blood sample.

The State relies on the principles established by the United States Supreme Court in Davis, supra, which held that "when the police conduct a search in objectively reasonable reliance on binding appellate precedent, the exclusionary rule does not apply." ___ U.S. at ___, 131 S. Ct. at 2434, 180 L. Ed. 2d at 302. The State submits that the outcome produced by Davis on prior prosecutions is consistent with results reached

9

under a New Jersey retroactivity analysis when there is a change in the law. The State requests that this Court adopt an analogue to the Davis exclusionary-rule remedy, asserting that there is no practical difference between exclusion of evidence based on a retroactivity analysis premised on a change in law and exclusion of evidence based on an exception to the exclusionary rule.

The State further argues that although in Novembrino, supra, 105 N.J. at 157-58, our Court specifically rejected the good faith exception recognized in United States v. Leon, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), where the evidence sought to be suppressed was obtained by a police officer operating under the authority of a search warrant issued by a judge without a sufficient basis for probable cause, the Court has not rejected the good faith exception in all circumstances. The State highlights Harris as demonstrating this Court's recognition that rigid application of the exclusionary rule is neither constitutionally mandated nor sound judicial policy in all circumstances.

The State adds that suppressing defendant's blood samples in this case will not further any of the purposes for the exclusionary rule. Citing State v. Ravotto, 169 N.J. 227 (2001) and State v. Dyal, 97 N.J. 229 (1984), the State argues that although New Jersey courts have never explicitly used the term

10

"exigency per se" to describe their interpretation of the Schmerber standard, it was universally understood that whenever police had probable cause to believe that a driver was intoxicated, they were authorized to obtain a blood test without a warrant. Thus, deterrence of police misconduct is not present here.

In sum, the State emphasizes that with McNeely there has been a shift in New Jersey Fourth Amendment jurisprudence such that a Davis good faith exception to the exclusionary rule's application is warranted in these circumstances.

C.

Amicus NJSBA agrees with defendant that McNeely did not drastically change New Jersey's Fourth Amendment jurisprudence and that, therefore, no retroactivity or good faith analysis is required. That said, NJSBA agrees with all other parties that, if this Court finds that McNeely established a new rule of law, federal retroactivity principles mandate that it be applied retroactively to all cases in the pipeline, which includes this case. Even under New Jersey retroactivity law, NJSBA asserts McNeely would be applied to this case, noting that the purpose of McNeely was to re-affirm the totality-of-the-circumstances-based holding in Schmerber, and that "some reliance" by law enforcement on a different and more indulgent view of the law in New Jersey governing the exigency analysis when alcohol

11

dissipation is at risk does not preclude retroactive application. Here the NJSBA contends that the State has not demonstrated that retroactive application would be burdensome.

NJSBA further asserts that no good faith exception to the exclusionary rule exists in New Jersey and that, were this Court to adopt Davis, we would essentially reverse the holding in Novembrino. NJSBA argues that the exclusionary rule serves dual purposes, one of which is to vindicate the Fourth Amendment right to be free from illegal searches, and to adopt Davis would undermine that purpose.

### III.

The United States Constitution and the New Jersey State Constitution both guarantee the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. As the United States Supreme Court has recognized, "a 'compelled intrusio[n] into the body for blood to be analyzed for alcohol content' must be deemed a Fourth Amendment search." Skinner v. Ry. Labor Execs. Ass'n, 489 U.S. 602, 616, 109 S. Ct. 1402, 1412, 103 L. Ed. 2d 639, 659 (1989) (alteration in original) (quoting Schmerber, supra, 384 U.S. at 768, 86 S. Ct. at 1834, 16 L. Ed. 2d at 918). "Because [this Court's] constitutional jurisprudence generally favors warrants based on probable cause, all warrantless searches or seizures

12

are presumptively unreasonable."  State v. Johnson, 193 N.J. 528, 552 (2008) (internal quotation marks omitted).

Warrantless searches are "prohibited unless they fall within a recognized exception to the warrant requirement." State v. Pena-Flores, 198 N.J. 6, 18 (2009).  One exception to that requirement is the presence of exigent circumstances. Johnson, supra, 193 N.J. at 552.  In assessing those circumstances, relevant factors include:  "the urgency of the situation, the time it will take to secure a warrant, the seriousness of the crime under investigation, and the threat that evidence will be destroyed or lost or that the physical well-being of people will be endangered unless immediate action is taken."  Id. at 553 (emphasis added).  Traditionally, no one factor is dispositive and exigency must be assessed on a case-by-case basis under a totality-of-the-circumstances standard. See State v. Deluca, 168 N.J. 626, 632-33 (2001).

In the context of the exigent-circumstances exception, the United States Supreme Court addressed the constitutionality of a warrantless blood draw from a suspected drunk driver in its 1966 decision in Schmerber, supra, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908.  In Schmerber, the defendant was transported to the hospital for the treatment of injuries sustained in an automobile accident and was subsequently arrested on suspicion of drunk driving.  Id. at 758, 86 S. Ct. at 1829, 16 L. Ed. 2d

at 912.  Without procuring a warrant, police directed hospital officials to draw a sample of the defendant's blood; that sample was used to determine the defendant's BAC level and, ultimately, to convict him of driving an automobile under the influence of alcohol.  Id. at 758-59, 86 S. Ct. at 1829, 16 L. Ed. 2d at 912-13.  In finding the warrantless blood draw constitutionally permissible, the Court concluded that although a warrant is typically required for the taking of blood,

> [t]he officer in the present case . . . might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence[.]  We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system.  Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant.  Given these special facts, we conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest.
>
> [Id. at 770-71, 86 S. Ct. at 1835-36, 16 L. Ed. 2d at 919-20 (citation omitted) (internal quotation marks omitted).]

The Schmerber Court added that the defendant's blood was drawn by a reasonable method and in a reasonable manner.  Id. at 771, 86 S. Ct. at 1836, 16 L. Ed. 2d at 920.

14

Following Schmerber, courts were not in universal agreement on whether the decision created a rule that the dissipation of alcohol constituted a per se exigency justifying a warrantless search. Compare State v. Shriner, 751 N.W.2d 538 (Minn. 2008) (per se rule), cert. denied, 555 U.S. 1137, 129 S. Ct. 1001, 173 L. Ed. 2d 292 (2009), State v. Machuca, 227 P.3d 729 (Or. 2010) (per se rule), and State v. Bohling, 494 N.W.2d 399 (Wis. 1993) (per se rule), cert. denied, 510 U.S. 836, 114 S. Ct. 112, 126 L. Ed. 2d 78 (1993), with State v. Johnson, 744 N.W.2d 340 (Iowa 2008) (no per se rule), and State v. Rodriguez, 156 P.3d 771 (Utah 2007) (no per se rule). To resolve the split in authority over the application of Schmerber, the Supreme Court granted the State of Missouri's petition for certiorari in McNeely, supra, ___ U.S. at ___, 133 S. Ct. at 1558, 185 L. Ed. 2d at 703. In that case, the State of Missouri argued that "the fact that alcohol is naturally metabolized by the human body creates an exigent circumstance in every case." Id. at ___, 133 S. Ct. at 1567, 185 L. Ed. 2d at 713-14. On appeal, Missouri did not rely on any other factor in support of its claim that exigency for a warrantless draw of blood had been established. Ibid.

In McNeely, the Court stated that Schmerber never created a per se rule but, instead, had incorporated a totality-of-the-circumstances test and had applied that test when assessing the facts presented in Schmerber. Id. at ___, 133 S. Ct. at 1558-

15

60, 185 L. Ed. 2d at 704-06.  The McNeely Court held that that same totality-of-the-circumstances test remains applicable whenever a court must assess for exigency in the circumstances of a warrantless search of a person suspected of driving under the influence, stating plainly that,

> while the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, as it did in Schmerber, it does not do so categorically.  Whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances.
>
> [Id. at ___, 133 S. Ct. at 1563, 185 L. Ed. 2d at 709 (emphasis added).]

Thus, the Supreme Court put to rest any ambiguity that existed following Schmerber:  dissipation of alcohol from a person's bloodstream is not the beginning and end of the analysis for exigency in all warrantless blood draws involving suspected drunk drivers.  Rather, courts must evaluate the totality of the circumstances in assessing exigency, one factor of which is the human body's natural dissipation of alcohol.

The present question before this Court is McNeely's application to the warrantless drawing of defendant's blood, which occurred prior to McNeely's issuance.

IV.

In Wessells, supra, we recently addressed "both the meaning of and the retroactive effect to be given to [a] decision of the

16

United States Supreme Court." 209 N.J. at 397. In reviewing the question of retroactivity, we noted that "federal retroactivity turns on whether a new rule of law has been announced, coupled with an analysis of the status of the particular matter, that is, whether it is not yet final, is pending on direct appeal, or is being collaterally reviewed." Id. at 411. Our holding in Wessells recognized that if a new rule has been established "for the conduct of criminal prosecutions" it will "be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." Id. at 412 (quoting Griffith v. Kentucky, 479 U.S. 314, 328, 107 S. Ct. 708, 716, 93 L. Ed. 2d 649, 661 (1987)). Accordingly, we applied in Wessells a new rule of law, concerning invocation of the right to counsel and the procedure for a suspect's continued interrogation, that had been established in Maryland v. Shatzer, 559 U.S. 98, 130 S. Ct. 1213, 175 L. Ed. 2d 1045 (2010), to a case pending review in New Jersey at the time the decision was handed down. Id. at 413.

As the Appellate Division found, and defendant and the State acknowledge, this case calls for a similar result under federal retroactivity law. The decision in McNeely may have been couched in terms that clarified Schmerber's intent -- namely, that Schmerber envisioned a totality-of-the-

17

circumstances test would be applied in the review of warrantless blood draws of suspected DWI drivers and that the natural dissipation of the blood evidence would not establish per se exigency -- but the McNeely Court nevertheless recognized that there was sufficient cause to grant certiorari to resolve an unsettled area of law, noting the split of authority around the country. McNeely, supra, ___ U.S. at ___, 133 S. Ct. at 1558, 185 L. Ed. 2d at 703. In that respect, the decision represents new law settling an area of criminal practice. Under federal retroactivity law, the decision deserves pipeline retroactive application. The United States Supreme Court has pronounced the standard to be applied under the Fourth Amendment to warrantless searches involving blood draws of suspected DWI drivers and, under Supremacy Clause principles, we are bound to follow it as the minimal amount of constitutional protection to be provided.

Therefore, in accord with the practice followed in Wessells, supra, 209 N.J. 395, we hold that the Supreme Court's decision in McNeely applies retroactively to cases that were in the pipeline when it was decided.

That said, the parties differ on whether the exclusionary rule should have any applicability in suppressing defendant's blood test results when the police merely followed an asserted, commonly held understanding of Schmerber's requirements in this State. Indeed, as defendant notes, following McNeely, the

18

Supreme Court granted a writ of certiorari in Brooks, supra, ___ U.S. at ___, 133 S. Ct. at 1996, 185 L. Ed. 2d at 863-64, a case involving a warrantless blood test of a drunk driving suspect, and the Court summarily vacated and remanded the decision of the Minnesota Court of Appeals.  Defendant cites Brooks as support for his view on the intended pipeline retroactivity of McNeely.

V.

Our Court is among those that have declined to recognize the exception to the exclusionary rule that was first established in Leon, supra, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677.

In Novembrino, supra, we rejected a good faith exception to the exclusionary rule, relying on Article I, Paragraph 7, of the New Jersey Constitution.  105 N.J. at 158-59.  In not following the path recognized by Leon, our Court took the view that the good faith exception would, over time, "tend to undermine the motivation of law-enforcement officers to comply with the constitutional requirement of probable cause."  Id. at 152.  The Novembrino Court concluded that suppressing evidence seized pursuant to invalid warrants would safeguard the integrity of the process by which warrants are sought and issued.  Id. at 154 ("Our view that the good faith exception will ultimately reduce respect for and compliance with the probable-cause standard that we have steadfastly enforced persuades us that there is strong

19

state interest that would be disserved by adopting the Leon rule.").

Our State has consistently rejected a good faith exception to the exclusionary rule. Post-Novembrino, our Court's adherence to its holding has remained steadfast and is not undermined by our recent conclusion in Harris.[4] In Harris, supra, we determined that the exclusionary rule was ill-suited to the specific circumstances of evidence secured pursuant to a warrant issued based on a "reasonable cause" standard utilized in the Prevention of Domestic Violence Act where the illegal-on-sight nature of the seized evidence was immediately apparent. 211 N.J. at 580, 587, 590 (noting that police did not engage in misconduct, did not err in execution of warrant, or disregard warrant's parameters). Importantly, we cautioned that the determination "should not be understood . . . as retreating from" the Court's "earlier rejection of the good faith exception" in Novembrino. Ibid.

Although the Appellate Division has applied a good faith approach to alterations in case law when engaging in a

---

[4] To the extent that the parties identify pre-Novembrino case law in which the Court relied, in part, on the good faith of officers following the law in declining to exclude evidence, we observe that each of those earlier cases dealt with evidence procured in connection with a statute later declared to be unconstitutional. See, e.g., State v. Zito, 54 N.J. 206, 210 (1969) (citing State v. Gerardo, 53 N.J. 261 (1969)).

20

retroactivity analysis under New Jersey law, see, e.g., State v. Skidmore, 253 N.J. Super. 227, 232-34 (App. Div. 1992) (declining to exclude evidence found in search of defendant's garbage, notwithstanding that search's procedure did not comply with subsequent decision in State v. Hempele, 120 N.J. 182 (1990)), this Court has never before embraced such an expansive approach to the exclusionary rule.  Cf. State v. Broom-Smith, 406 N.J. Super. 228, 238 n.4 (App. Div. 2009) (distinguishing Novembrino by focusing on its emphasis on safeguarding probable-cause standard, stating "[u]nlike Novembrino, this aspect of the case does not implicate a lack of probable cause for issuance of the warrant and does not implicate the same policy concerns underlying the Court's rejection of the good faith doctrine"),[5] aff'd, 201 N.J. 229 (2010).

In this matter we deal specifically with police conduct in reliance on case law in New Jersey that led law enforcement to the reasonable conclusion that the natural dissipation of alcohol from the human body created exigency sufficient to dispense with the need to seek a warrant.  Although our decisions never expressly pronounced an understanding of

---

[5] The panel also relied on Rule 3:5-7(g), which provides that no search conducted pursuant to a search warrant containing "technical insufficiencies or irregularities" shall be deemed unlawful.  Broom-Smith, supra, 406 N.J. Super. at 238 (citing Novembrino, supra, 105 N.J. at 130 n.15).

21

*Schmerber* that per se permitted warrantless blood draws in all cases on the basis of alcohol dissipation alone, case law contains language that provides a basis for such a belief. See *Ravotto*, *supra*, 169 *N.J.* 227; *Dyal*, *supra*, 97 *N.J.* 229.

In *Ravotto*, *supra*, while focused on the reasonableness of the force used by the police in procuring a blood sample, the Court noted that "consistent with *Schmerber* and our analogous case law, the dissipating nature of the alcohol content in defendant's blood presented an exigency that required prompt action by the police." 169 *N.J.* at 250. In *Dyal*, *supra*, this Court addressed the application of the patient-physician privilege to the admission of the results of a BAC blood test. 97 *N.J.* at 231. In that factual context, this Court noted that "the encounter between a patrolman and a drunken driver often arises in the context of an emergency," that "[o]ne crucial consideration is that the body eliminates alcohol at a rapid rate," and that "police, while coping with an emergency, should not be obliged to obtain a search warrant before seeking an involuntary blood test of a suspected drunken driver." *Id.* at 239-40 (referencing *Schmerber* generally throughout). The Court added the more pointed statement, untethered to the specific facts therein presented, that "[a] drunken driver arrested by police with probable cause to believe he is intoxicated has no federal constitutional right to prevent the involuntary taking

22

of a blood sample." Id. at 238.[6]  The Supreme Court has now

clarified the appropriate test to be applied to warrantless

blood draws, and we will adhere to that test without any

superimposed exception.  That said, we accept that our case law

played a leading role in dissuading police from believing that

they needed to seek, or explaining why they did not seek, a

warrant before obtaining an involuntary blood draw from a

suspected drunk driver.  With that in mind, we return to the

touchstone of the Fourth Amendment -- reasonableness.  State v.

Bruzzese, 94 N.J. 210, 217 (1983).

In holding that we shall retroactively enforce the Supreme

Court's declaration that the totality-of-the-circumstances

examination applies to all blood draws from suspected drunk

drivers, we hold further that law enforcement should be

permitted on remand in these pipeline cases to present to the

court their basis for believing that exigency was present in the

facts surrounding the evidence's potential dissipation and

---

[6] We note that there has not been uniformity among the Appellate
Division panels in their interpretation of this Court's
jurisprudence.  Compare State v. Woomer, 196 N.J. Super. 583,
586 (App. Div. 1984) (quoting Dyal, supra, 97 N.J. at 238 for
proposition that drunken driver "has no federal constitutional
right to prevent the involuntary taking of a blood sample"),
with Jiosi v. Twp. of Nutley, 332 N.J. Super. 169, 179 (App.
Div. 2000) (noting that Schmerber "did not provide a carte
blanch exception to the warrant requirement whenever there is
probable cause to believe a suspect is under the influence of
alcohol or drugs").

police response under the circumstances to the events involved in the arrest.  Further, the exigency in these circumstances should be assessed in a manner that permits the court to ascribe substantial weight to the perceived dissipation that an officer reasonably faced.  Reasonableness of officers must be assessed in light of the existence of the McNeely opinion.  But, in reexamining pipeline cases when police may have believed that they did not have to evaluate whether a warrant could be obtained, based on prior guidance from our Court that did not dwell on such an obligation, we direct reviewing courts to focus on the objective exigency of the circumstances that the officer faced in the situation.

## VI.

The judgment of the Appellate Division is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.


CHIEF JUSTICE RABNER; JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE LaVECCHIA's opinion.

24

SUPREME COURT OF NEW JERSEY

NO.    A-91                          SEPTEMBER TERM 2013

ON CERTIFICATION TO     Appellate Division, Superior Court

STATE OF NEW JERSEY,

        Plaintiff-Respondent,

                v.

TIMOTHY ADKINS,

        Defendant-Appellant.

DECIDED        May 4, 2015
            Chief Justice Rabner                    PRESIDING
OPINION BY          Justice LaVecchia
CONCURRING/DISSENTING OPINIONS BY
DISSENTING OPINION BY

| CHECKLIST | REVERSE AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |