NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0623-15T4

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

GREGORY TANASHIAN,

 Defendant-Appellant.
____________________________

 Argued October 24, 2017 – Decided November 3, 2017

 Before Judges Fasciale and Moynihan.

 On appeal from Superior Court of New Jersey,
 Law Division, Bergen County, Docket No. 004-
 08-14.

 John Vincent Saykanic argued the cause for
 appellant.

 Elizabeth R. Rebein, Assistant Prosecutor,
 argued the cause for respondent (Gurbir S.
 Grewal, Bergen County Prosecutor, attorney;
 Ms. Rebein, of counsel and on the brief).

PER CURIAM

 Defendant appeals from his de novo conviction for driving

while intoxicated (DWI), N.J.S.A. 39:4-50. This case involves

allegations that defendant drove under the influence of an
inhalant, not alcohol. Erroneous evidentiary rulings, which may

have influenced credibility findings, together with cumulative

errors deprived defendant of a fair trial. We therefore reverse

and remand.

 Defendant had an accident in a parking lot at approximately

10:00 a.m. (the parking lot accident), for which he received no

motor vehicle tickets. Defendant was allegedly involved in a hit-

and-run accident later that morning (the hit-and-run accident),

for which he received two tickets: careless driving, N.J.S.A.

39:4-97; and leaving the scene of an accident, N.J.S.A. 39:4-

129(b). At approximately 3:40 p.m. the same day, defendant's

vehicle struck a tree (the tree accident), and he received two

additional tickets: one for DWI, N.J.S.A. 39:4-50, and one for

careless driving, N.J.S.A. 39:4-97.

 Defendant moved to sever the tickets relating to the hit-and-

run accident and the tree accident; dismiss the charges on

discovery grounds; suppress urine-test results; and exclude

testimony from the State's drug recognition expert (DRE), Officer

Salvatore LoCascio. The Municipal Court judge granted defendant's

motion to sever the tickets, and denied the motions to dismiss the

tickets, suppress the urine-test results, and exclude the

officer's testimony. The Municipal Court judge then tried the

case on the tree accident charges.

 2 A-0623-15T4
 The State produced testimony from three witnesses: Officer

John Brown; Officer LoCascio; and Monica Tremontin, an expert

toxicologist. Defendant produced testimony from Dr. Richard

Saferstein. The State stipulated to Dr. Saferstein's

qualifications as an expert in the field of forensic science.

 Officer Brown responded to the scene of the tree accident.

When he arrived at the scene, the officer observed defendant

standing outside his vehicle, which had struck a tree located on

someone's lawn. No other vehicle was present, although defendant

eventually told the officer that another vehicle ran him off the

road.

 Officer Brown noticed red-paint scrapes, which were

purportedly from the hit-and-run accident, on the side of

defendant's vehicle. Brown testified that defendant produced his

credentials in a "[s]low lethargic manner," his complexion was

pale, and he "didn't look quite right." The officer conducted

field sobriety tests, suspected defendant was under the influence,

and arrested him after verbally administering his Miranda1 rights.

Officer Brown had the vehicle towed from the scene, and transported

defendant to police headquarters.

1
 Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d
694 (1966).

 3 A-0623-15T4
 Defendant arrived at the police station and agreed to provide

a urine sample. Defendant gave breath samples, which showed

Alcotest results of 0.0%. As a result, Officer Brown contacted

the Bergen County Police Department and requested that its DRE,

Officer LoCascio, perform a drug influence evaluation of

defendant.

 Officer LoCascio arrived at the police station and conducted

the examination. He testified that defendant looked "sluggish,

and he appeared drowsy" and "drunk-like." According to the

officer, defendant's speech was "slow, thick and slurred" and

defendant admitted to taking Xanax, Ambien, and Klonopin.

 Officer LoCascio performed a Horizontal Gaze Nystagmus test,

a Vertical Gaze Nystagmus test, and a Romberg balance test, all

of which defendant failed. The officer noticed that defendant's

eyelids were tremoring and his eyes were dilated beyond the average

threshold; his breath had a chemical odor; his tongue had a

brownish tint to it; and his eyes were bloodshot and droopy.

Defendant counted the passage of thirty-five seconds in seventy-

five seconds. Officer LoCascio concluded that defendant was under

the influence of an inhalant.

 Ms. Tremontin analyzed defendant's urine sample using a Gas

Chromatography Mass Spectroscopy. Ms. Tremontin testified that

she tested a urine sample that leaked, which meant "there was the

 4 A-0623-15T4
possibility of the vapor . . . escaping from the container with

the urine in it." She tested that sample twice: one analysis was

negative, and the other showed an indication of difluoroethane

(DFE). Ms. Tremontin concluded that she did not have a proper

sample, and requested another sample from the original specimen.

She then tested the new sample twice, and both were positive for

DFE.

 Dr. Saferstein testified that the State's method of testing

defendant's urine could not prove that he was under the influence

of DFE when the tree accident occurred. He opined that the testing

could only show that DFE was present in the urine, but could not

show the quantity, which would clarify the timing of when defendant

may have been under the influence of DFE. Dr. Saferstein testified

that traces of DFE may be present in a urine sample for up to

seventy-two hours after use and that defendant's positive urine

test does not prove he was under the influence while driving.

 The Municipal Court judge found defendant guilty of DWI.2 In

reaching that verdict, she found the State's witnesses to be

credible. The Municipal Court judge suspended defendant's license

for two years, and imposed the proper fines and penalties.

2
 The Municipal Court judge then dismissed the careless driving
ticket from the tree accident, and the other two tickets related
to the hit-and-run accident.

 5 A-0623-15T4
Defendant then appealed from his DWI conviction to the Law

Division.

 In the Law Division, the judge conducted a de novo trial. He

deferred to the credibility findings of the Municipal Court judge,

and found defendant guilty of DWI. The judge then suspended

defendant's license for two years, imposed the same penalties

defendant had received in municipal court, and then stayed the

sentence pending this appeal.

 On appeal, defendant argues:

 POINT I
 THE LAW DIVISION JUDGE ERRED IN NOT FINDING
 THAT THE MUNICIPAL COURT JUDGE DID NOT ABUSE
 HER DISCRETION IN HER EVIDENTIARY RULINGS BY
 THE ADMISSION OF THE "NEW JERSEY POLICE CRASH
 INVESTIGATION REPORT" (S-1), THE "FIELD
 SOBRIETY CHECKLIST" (S-2), THE LETTER OF
 SERGEANT FIRST CLASS KEVIN M. FLANAGAN (S-3),
 THE "DRUG INFLUENCE EVALUATION" (S-4), AND THE
 "LOG OF DRUG INFLUENCE EVALUATION" (S-5); THE
 MUNICIPAL COURT VIOLATED NOT ONLY DEFENDANT'S
 SIXTH AMENDMENT CONFRONTATION RIGHTS, BUT
 VIOLATED HIS FOURTEENTH AMENDMENT DUE PROCESS
 RIGHT TO A FAIR TRIAL, VIOLATED THE UNITED
 STATES SUPREME COURT'S RULING IN CRAWFORD V.
 WASHINGTON,[] AND VIOLATED THE NEW JERSEY
 SUPREME COURT'S RULING IN STATE V. KUROPCHAK.

 POINT II
 THE LAW DIVISION FINDING OF GUILT DE NOVO
 SHOULD BE REVERSED AS TO THE DWI CONVICTION
 AND A FINDING OF "NOT GUILTY" SHOULD BE
 ENTERED; THE LAW DIVISION COMMITTED CLEAR
 ERROR IN FINDING DEFENDANT GUILTY AND THE
 INTERESTS OF JUSTICE DEMAND INTERVENTION AND
 CORRECTION AS THE STATE FAILED TO PROVE THE
 REQUISITE ELEMENTS OF DEFENDANT'S OPERATION OF

 6 A-0623-15T4
 A MOTOR VEHICLE WHILE UNDER [THE] INFLUENCE
 OF DRUGS BEYOND A REASONABLE DOUBT.

 POINT III
 THE TRIAL COURT ABUSED ITS DISCRETION IN
 FAILING TO EXCLUDE THE STATE'S EXPERT WITNESS
 AND IN REFUSING TO CONDUCT A FRYE[3] HEARING
 SINCE THE DRE PROGRAM AND THE DRE WITNESS WERE
 BOTH UNQUALIFIED UNDER EVIDENCE RULE 702 AND
 PURSUANT TO STATE V. DORIGUZZI; THE ADMISSION
 OF THE DRE EXPERT TESTIMONY VIOLATED THE
 DEFENDANT'S FOURTEENTH AMENDMENT DUE PROCESS
 RIGHT TO A FAIR TRIAL.

 POINT IV
 THE DWI CONVICTION MUST BE REVERSED AND THE
 SUMMONSES DISMISSED (OR, AT THE VERY LEAST,
 ALL EVIDENCE AND THE DEFENDANT'S STATEMENTS
 SUPPRESSED) AS THE ARRESTING OFFICER LACKED
 PROBABLE CAUSE TO ARREST THE DEFENDANT; THE
 TRIAL COURT WAS CLEARLY MISTAKEN AND THE
 INTERESTS OF JUSTICE DEMAND INTERVENTION AND
 CORRECTION.

 POINT V
 THE TRIAL COURT WAS CLEARLY MISTAKEN IN
 FAILING TO SUPPRESS THE DEFENDANT'S URINE
 SPECIMEN WHICH WAS OBTAINED AT HEADQUARTERS
 WITHOUT A WARRANT OR VALID CONSENT; THE
 INTERESTS OF JUSTICE DEMAND INTERVENTION AND
 CORRECTION.

 POINT VI
 THE COURTS BELOW ERRED IN FAILING TO SUPPRESS
 OR GIVE LITTLE WEIGHT TO THE TESTIMONY OF THE
 STATE'S CHEMIST REGARDING HER ANALYSIS OF THE
 DEFENDANT'S URINE BASED ON DEFECTIVE CHAIN OF
 CUSTODY AND A LEAKING CONTAINER IN WHICH THE
 URINE WAS STORED; THE TRIAL COURT ABUSED ITS

3
 Frye v. United States, 293 F. 1013 (D.C. Cir. 1923) (outlining
expert testimony, authoritative literature, and judicial
recognition as the methods of determining general acceptability
of scientific methods).

 7 A-0623-15T4
 DISCRETION IN ADMITTING TESTIMONY AS TO THE
 URINALYSIS RESULTS.

 POINT VII
 THE NUMEROUS ERRORS THAT OCCURRED AT TRIAL
 DEPRIVED DEFENDANT OF HIS FOURTEENTH AMENDMENT
 DUE PROCESS RIGHT TO A FAIR TRIAL MANDATING A
 REVERSAL OF HIS DWI CONVICTION.

 The following general standards guide our review. When a

defendant appeals to the Law Division from a conviction entered

in a municipal court, the judge is required to conduct a de novo

review of the record, giving "due regard to the municipal judge's

opportunity to view the witnesses and assess credibility." State

v. Golin, 363 N.J. Super. 474, 481 (App. Div. 2003) (citing State

v. Johnson, 42 N.J. 146, 157 (1964)). On appeal from the Law

Division, we must determine whether the judge's findings "could

reasonably have been reached on sufficient credible evidence

present in the record." Johnson, supra, 42 N.J. at 162. "Any

error or omission shall be disregarded by the appellate court

unless it is of such a nature as to have been clearly capable of

producing an unjust result . . . ." R. 2:10-2.

 N.J.S.A. 39:4-50(a) prohibits operating a motor vehicle

"while under the influence of intoxicating liquor, narcotic,

hallucinogenic or habit-producing drug." "[T]he phrase 'narcotic,

hallucinogenic or habit-producing drug' includes an inhalant

. . . ." Ibid. Here, the State maintained that defendant was

 8 A-0623-15T4
under the influence of DFE. Although DFE is not listed in the

statute, the Supreme Court has held that N.J.S.A. 39:4-50(a) "does

not require that the particular narcotic be identified." State

v. Tamburro, 68 N.J. 414, 421 (1975).

 "A conviction for DWI requires proof beyond a reasonable

doubt." State v. Kuropchak, 221 N.J. 368, 382 (2015). The State

attempted to prove defendant was under the influence of DFE by

offering testimony from two experts and by introducing testimony

from Officer Brown's observations of defendant at the scene of the

tree accident and police station. Critical to accepting the

State's theory of the case was the believability of these

witnesses, because without accepting their expert opinions and

observation testimony, the State would be unable to show defendant

was under the influence of DFE. Here, we conclude the Municipal

Court judge's credibility determinations "may have [been] unduly

influenced" by multiple layers of inadmissible hearsay. Id. at

374.

 I.

 We begin by addressing defendant's contention as to the

admissibility of a police crash investigation report (S-1); a

field sobriety checklist (S-2); a letter congratulating Officer

LoCascio (S-3); a drug influence evaluation report (S-4); and a

log of drug influence evaluations (S-5). Defense counsel

 9 A-0623-15T4
repeatedly objected to the admissibility of these documents on

hearsay grounds.

 We accord "substantial deference to a trial court's

evidentiary rulings." State v. Morton, 155 N.J. 383, 453 (1998),

cert. denied, 532 U.S. 931, 121 S. Ct. 1380, 149 L. Ed. 2d 306

(2001). "[T]he decision of the trial court must stand unless it

can be shown that the trial court palpably abused its discretion,

that is, that its finding was so wide of the mark that a manifest

denial of justice resulted." State v. Carter, 91 N.J. 86, 106

(1982). Such is the case here.

 Officer Brown prepared S-1, which is a five-page crash

investigation report. The assistant prosecutor properly presented

S-1 to the officer during his testimony, solely as an aid to

refresh his recollection. At the conclusion of all testimony,

however, the State moved S-1 into evidence to prove the truth of

what the entire report asserted. S-1 is therefore inadmissible

hearsay even though the officer testified and was subject to cross-

examination.

 S-1 also contains multiple embedded hearsay statements from

other declarants, including an alleged witness to the hit-and-run

accident, a police officer who reported what that individual told

him about the hit-and-run accident, Officer LoCascio, and

statements from defendant's wife. At no point did the State lay

 10 A-0623-15T4
a proper foundation to move S-1 into evidence, including any of

the multiple layers of hearsay.

 S-2 is a one-page document prepared by Officer Brown after

completing the field sobriety tests. The officer testified about

performing the tests and the results. Certainly he could use S-2

to refresh his recollection if need be, but the document is

considered hearsay and the State laid no foundation for its

admissibility. Additionally, S-2 contains embedded hearsay from

Officer LoCascio by reporting his opinion that defendant was under

the influence of an inhalant.

 S-3 is an April 20, 2010 letter to Officer LoCascio from a

sergeant of the Alcohol/Drug Test Unit of the Department of Law

and Public Safety. The sergeant congratulated the officer on

becoming a DRE expert, and made other comments in the letter as

to the officer's qualifications as an expert. Officer LoCascio

testified about his own qualifications. If he needed S-3 to

refresh his recollection, then he could have used the document.

Otherwise, S-3 is hearsay and the State failed to lay a foundation

for its admissibility at trial.

 Officer LoCascio prepared S-4, which is his drug influence

evaluation report. The officer could have used S-4 to refresh his

recollection during his testimony, however, the document is

considered hearsay and inadmissible unless it falls into a hearsay

 11 A-0623-15T4
exception. S-4 also contains additional statements from Officer

Brown, who told Officer LoCascio that defendant's wife had told

him defendant possessed a large quantity of computer cleaning

solvents, which the wife said defendant had ingested. The State

did not lay a foundation for the admissibility for S-4 or for the

embedded hearsay statements under any exception to the hearsay

rule, or even under N.J.R.E. 703.

 S-5 is a seven-page hearsay document purportedly logging

Officer LoCascio's drug evaluations of numerous individuals not

involved in this case. The officer testified at the trial and

could have recited this information, subject to relevancy grounds,

and if he was unable to do so, then the officer could have used

S-5 to refresh his recollection.

 In Kuropchak, the Court concluded that the admissibility of

a Drinking Driving Questionnaire and a Drinking Driving Report

contained inadmissible hearsay and "may have unduly influenced the

municipal court's credibility findings." Kuropchak, supra, 221

N.J. at 373-74. We too conclude that the embedded hearsay

statements contained in S-1 to S-5, especially the statements by

defendant's wife about his ingestion of cleaning solvents, may

have influenced the Municipal Court judge's findings that the

State's witnesses testified credibly. Moreover, the admissibility

of embedded hearsay statements from the wife and purported witness

 12 A-0623-15T4
to the hit-and-run accident deprived defense counsel of the

opportunity to cross-examine them.

 II.

 Defendant contends that the police seized his urine sample

in violation of his federal and state constitutional rights.

Defendant argues that the police violated his rights by obtaining

his urine specimen without proper consent or a warrant. Defendant

urges us, at the very least, to remand like the Supreme Court did

in State v. Verpent, 221 N.J. 494 (2015) and State v. Adkins, 221

N.J. 300 (2015). We agree and remand on this issue for further

proceedings.

 The Supreme Court in Adkins, held that it would apply

Missouri v. McNeely, 569 U.S. 141, 133 S. Ct. 1552, 185 L. Ed. 2d

696 (2013), retroactively. Adkins, supra, 221 N.J. at 313.

McNeely, held that "in drunk-driving investigations, the natural

dissipation of alcohol in the bloodstream does not constitute an

exigency in every case sufficient to justify conducting a blood

test without a warrant." McNeely, supra, 569 U.S. at 165, 133 S.

Ct. at 1568, 185 L. Ed. 2d at 715. Adkins further held that law

enforcement should "present to the court their basis for believing

that exigency was present in the facts surrounding the evidence's

potential dissipation and police response under the circumstances

 13 A-0623-15T4
to the events involved in the arrest." Adkins, supra, 221 N.J.

at 317.

 Under certain circumstances, courts have held obtaining

warrantless urine samples subsequent to arrest to be

constitutional. In State v. Malik, 221 N.J. Super. 114, 118, 120

(App. Div. 1987), we concluded that a request for urine fell under

the incident to arrest exemption and the exigency exemption to the

warrant requirement. We further stated that "a person arrested

by the police with probable cause to believe that [he or] she has

recently ingested a controlled dangerous substance has no federal

constitutional right to prevent being required to give a urine

sample." Id. at 122. We explained that "urinalyses are

commonplace in these days of periodic physical examinations and

do not constitute an unduly extensive imposition on an individual's

personal privacy and bodily integrity." Ibid.

 After its decision in Adkins, the Supreme Court remanded in

Verpent, supra, 221 N.J. at 495. Verpent involved a defendant

voluntarily providing a urine sample following DRE testing to

police who did not have a warrant for it. State v. Verpent, No.

A-3807-10 (App. Div. July 2, 2012) (slip op. at 5), rev'd 221 N.J.

494 (2015). The Supreme Court ordered a new suppression hearing

to address exigency "on a newly developed and fuller record in

light of . . . Adkins." Verpent, supra, 221 N.J. at 494. As in

 14 A-0623-15T4
Verpent, we too remand to develop a more complete record, after

which the Municipal Court judge should re-visit defendant's motion

to suppress the urine sample.

 III.

 We reject defendant's contention that the Municipal Court

judge erred by failing to conduct a Frye hearing and permitting

Officer LoCascio to testify as a DRE.

 In a criminal case, we ordinarily review de novo a trial

judge's decision after a Frye hearing. State v. McGuire, 419 N.J.

Super. 88, 123-24, 130 (App. Div.), certif. denied, 208 N.J. 335

(2011). Here, the question is whether the Municipal Court judge

erred by not conducting a Frye hearing as to Officer LoCascio.

Generally, a trial judge has discretion in determining the

sufficiency of an expert's qualifications "and [his or her

decision] will be reviewed only for manifest error and injustice."

State v. Ravenell, 43 N.J. 171, 182 (1964), cert. denied, 379 U.S.

982, 85 S. Ct. 690, 13 L. Ed. 2d 572 (1965). Such is not the case

here.

 Expert testimony only requires that a witness be qualified

"by knowledge, skill, experience, training, or education."

N.J.R.E. 702. Here, the Municipal Court judge properly admitted

the DRE testimony. New Jersey courts have not invalidated DRE

protocol or DRE experts. See e.g., State v. Franchetta, 394 N.J.

 15 A-0623-15T4
Super. 200 (App. Div. 2007). Moreover, the Municipal Court judge

permitted extensive testimony from Officer LoCascio about his

qualifications and did not abuse her discretion when she found him

to be a DRE. The Supreme Court has also found that police officers

were eligible experts on marijuana intoxication pursuant to

N.J.R.E. 702 because of their specialized training "in detecting

drug-induced intoxication." State v. Bealor, 187 N.J. 574, 592-

93 (2006).

 IV.

 We reject defendant's contention that the arresting officer

lacked probable cause.

 The probable cause to arrest standard is "a 'well grounded'

suspicion that a crime has been or is being committed" by the

defendant. State v. Waltz, 61 N.J. 83, 87 (1972) (quoting State

v. Burnett, 42 N.J. 377, 387 (1964)). "Probable cause exists

where the facts and circumstances within . . . [the officers']

knowledge and of which they had reasonably trustworthy information

[are] sufficient in themselves to warrant a [person] of reasonable

caution in the belief that an offense has been or is being

committed." Schneider v. Simonini, 163 N.J. 336, 361 (2000) (first

and second alterations in original) (quoting Brinegar v. United

States, 338 U.S. 160, 175-76, 69 S. Ct. 1302, 1310-11, 93 L. Ed.

 16 A-0623-15T4
1879, 1890 (1949)), cert. denied, 531 U.S. 1146, 121 S. Ct. 1083,

148 L. Ed. 2d 959 (2001).

 Probable cause for driving under the influence will be found

where an officer "ha[d] reasonable grounds to believe that [the

driver was] operating a motor vehicle in violation" of the DWI

statute. N.J.S.A. 39:4-50.2; see also Strelecki v. Coan, 97 N.J.

Super. 279, 284 (App. Div. 1967). In assessing probable cause, a

judge considers the totality of the circumstances. State v. Moore,

181 N.J. 40, 46 (2004). The facts are viewed "from the standpoint

of an objectively reasonable police officer." State v. Basil, 202

N.J. 570, 585 (2010) (quoting Maryland v. Pringle, 540 U.S. 366,

371, 124 S. Ct. 795, 800, 157 L. Ed. 2d 769, 775 (2003)).

 Here, Officer Brown had reasonable grounds to believe

defendant was operating a motor vehicle in violation of the DWI

statute. Defendant was outside his vehicle after the tree

accident, produced his credentials lethargically, giggled at

Officer Brown, failed the field sobriety tests, and denied that

he had been in an accident.

 V.

 We reject defendant's argument that the court failed to

suppress testimony from Ms. Tremontin because of an alleged

defective chain of custody as to the leaking urine container. The

United States Supreme Court has made clear "it is not the case[]

 17 A-0623-15T4
that anyone whose testimony may be relevant in establishing the

chain of custody, authenticity of the sample, or accuracy of the

testing device, must appear in person as part of the prosecution's

case." Melendez-Diaz v. Massachusetts, 557 U.S. 305, 311 n.1, 129

S. Ct. 2527, 2532 n.1, 174 L. Ed. 2d 314, 322 n.1 (2009). Rather,

the Court explained that gaps in chain of custody go to the weight

of the evidence, not its admissibility. Ibid.; see also Morton,

supra, 155 N.J. at 446-47. Furthermore, the positive DFE test

results came from the second urine sample, which had not leaked.

Even if the State failed to demonstrate the chain of custody, such

a failure would go to the weight of the evidence and not the

admissibility.

 After considering the record, arguments at oral argument

before us, and the briefs, we conclude that defendant's remaining

arguments are "without sufficient merit to warrant discussion in

a written opinion." R. 2:11-3(e)(2). In reversing the DWI

conviction, we do not mean to suggest that the State may ultimately

not prevail. Rather, we emphasize that we premise the reversal

primarily on the potentially infected credibility determinations

flowing from the multiple layers of embedded hearsay. The outcome

on remand will depend on the proofs presented.

 Reversed and remanded for a new trial in the municipal court.

In fairness to the Municipal Court judge who tried the case and

 18 A-0623-15T4
made the credibility findings, we remand to a different Municipal

Court judge for further proceedings consistent with this opinion.

We do not retain jurisdiction.

 19 A-0623-15T4