NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0289-14T2

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

VINCENT LAING,

 Defendant-Appellant.

__________________________________________

 Submitted December 20, 2016 – Decided May 17, 2017

 Before Judges Espinosa, Guadagno and Suter.

 On appeal from Superior Court of New Jersey,
 Law Division, Monmouth County, Indictment No.
 11-01-0018.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Jay L. Wilensky, Assistant
 Deputy Public Defender, of counsel and on the
 brief).

 Christopher J. Gramiccioni, Monmouth County
 Prosecutor, attorney for respondent (Monica do
 Outeiro, Assistant Prosecutor, of counsel and
 on the brief).

 Appellant filed a pro se supplemental brief.

PER CURIAM
 Defendant was convicted of second-degree vehicular homicide,

N.J.S.A. 2C:11-5(a) and N.J.S.A. 2C:11-5(b)(1), and third-degree

possession of a controlled dangerous substance (alprazolam),

N.J.S.A. 2C:35-10(a)(1). He appeals from his convictions and

sentence, presenting the following arguments for our

consideration:

 POINT I

 THE POLICE VIOLATED THE DEFENDANT'S
 RIGHT AGAINST UNLAWFUL SEARCH AND
 SEIZURE BY TAKING A BLOOD SAMPLE
 WITHOUT A WARRANT OR CONSENT. U.S.
 CONST., AMENDS. IV, XIV; N.J. CONST.
 (1947), ART. 1, PAR. 7.

 POINT II

 THE STATE COMMITTED SUBSTANTIAL AND
 PREJUDICIAL MISCONDUCT,
 NECESSITATING REVERSAL. U.S.
 CONST., AMEND. XIV; N.J. CONST.,
 ART. 1, PARS. 9, 10 (PARTIALLY
 RAISED BELOW).

 A. STATE'S OPENING

 B. STATE'S SUMMATION

 C. QUESTIONING OF DETECTIVE
 KERECMAN

 POINT III

 THE TRIAL COURT ABUSED ITS
 DISCRETION IN DENYING DEFENDANT'S
 MOTION TO ADMIT THE DRIVING RECORD
 OF THE TAXI DRIVER INVOLVED IN THE
 INCIDENT.

 2 A-0289-14T2
 POINT IV

 THE TRIAL COURT IMPOSED AN EXCESSIVE
 SENTENCE, NECESSITATING REDUCTION.

 In a supplemental pro se brief, defendant presents the

following arguments:

 POINT I

 DEFENDANT'S CONSTITUTIONAL RIGHTS
 TO DUE PROCESS AND TO A FAIR TRIAL
 WERE VIOLATED BY THE TRIAL COURT'S
 DENIAL OF HIS MOTION FOR JUDGMENT OF
 ACQUITTAL AT THE END OF THE STATE'S
 CASE AND FOR A NEW TRIAL BECAUSE THE
 VERDICT WAS AGAINST THE WEIGHT OF
 THE EVIDENCE.

 POINT II

 THE TRIAL COURT COMMITTED
 REVERSIBLE ERROR IN ITS FAILURE TO
 GIVE THE JURY A BALANCED RENDITION
 OF THE FACTS. (NOT RAISED BELOW).

 POINT III

 THE TRIAL COURT COMMITTED PLAIN
 ERROR IN ITS CHARGE TO THE JURY ON
 THE CRITICAL ISSUE OF CAUSATION BY
 FAILING TO DISCUSS THE EVIDENCE AND
 LAW IN THE CONTEXT OF THE MATERIAL
 FACTS INVOLVED IN THE CASE, DENYING
 THE DEFENDANT'S FEDERAL AND STATE
 CONSTITUTIONAL RIGHTS TO A FAIR
 TRIAL. (NOT RAISED BELOW).

 POINT IV

 THE CUMULATIVE WEIGHT OF THE ERRORS
 DEPRIVED DEFENDANT OF A FAIR TRIAL.

 3 A-0289-14T2
 After reviewing these arguments in light of the record and

applicable legal principles, we conclude that none have any merit.

We further conclude that the arguments raised by defendant in his

pro se supplemental brief lack sufficient merit to warrant

discussion in a written opinion. R. 2:11-3(e)(2).

 I.

 Defendant's convictions follow a fatal motor vehicle accident

in Neptune at approximately 5:30 p.m. on June 24, 2009. According

to witness accounts, the Honda Accord driven by defendant was

traveling eastbound on Route 33 when it crossed over to the

westbound lanes at a high rate of speed, causing a mini-van cab

to turn into the eastbound lanes to avoid a collision. The Accord

drove, nearly head-on, into a Ford Focus driven by an eighty-two-

year-old woman, who was pronounced dead at the scene, having

suffered a fractured neck that dislocated her spine as well as

multiple fractures and lacerations. The impact of the collision

caused both cars to "fly up in the air" six to seven feet off the

ground. Defendant took no action to avert the accident or slow

down.

 Accident reconstruction experts testified that defendant was

driving at approximately sixty-three to sixty-four miles per hour

and that he was in the victim's lane of travel "for a good amount

of time" prior to the collision. However, because the roadway

 4 A-0289-14T2
crested and curved prior to the scene of the accident, the victim

would have had only seconds to react to defendant's car coming

toward her. The experts opined she applied her brakes and turned

her vehicle slightly but that defendant took "no avoidant action"

before the collision.

 A passing motorist who happened to be an EMT stopped to

provide assistance. She found defendant to be "lethargic," with

blood on his face, "underneath the dashboard" of his vehicle. She

spoke to defendant, stabilized his head and, when first responders

arrived approximately five minutes later, she turned his care over

to them.

 The first responders to the accident included the fire

department, first aid, the Monmouth Ocean Hospital Service

Corporation, the New Jersey State Police, Neptune Township Police,

the Monmouth County Prosecutor's Office, the Serious Collision

Analysis Response Team (SCART), the Department of Transportation

and the Office of Emergency Medicine. The Fatal Motor Vehicle

Accident Unit (Fatal Accident Unit) of the prosecutor's office was

contacted at 6:10 p.m. Efforts to extricate the victim from her

vehicle were abandoned when she was pronounced dead at 6:30 p.m.

The on-scene investigation by SCART continued for at least two

hours more as SCART made assessments, photographed and diagrammed

 5 A-0289-14T2
the roadway. Detective Eric Kerecman, a Fatal Accident Unit

officer, remained on the scene until 9:30 p.m.

 Defendant was treated at the scene by first aid members and

paramedics, who provided him with intravenous fluids but no

medications. He was transported to Jersey Shore University Medical

Center.

 The continuing investigation at the accident scene revealed

no skid marks or deformity in the roadway or any road construction

in the area. A search for items in defendant's car that might

have contributed to the accident, such as food, drink or a

cellphone, was fruitless. A subsequent test of the two vehicles

showed they were in good mechanical working order prior to the

accident.

 Upon defendant's arrival at the hospital, a trauma unit nurse

found him to be "[a]wake, alert, oriented times three," and

"complaining of hip pain," which proved to be a dislocated hip.1

Defendant was given medication, including five milligrams of

morphine, two milligrams of Versed and one hundred milligrams of

Diprivan.

1
 Defendant testified that he also had a broken left forearm, a
fractured pelvis and a broken "ball and socket joint, the bone
that holds your leg to your hip." Defendant remained hospitalized
until July 3, 2009.

 6 A-0289-14T2
 At approximately 7:20 p.m., a trauma technician drew samples

of defendant's blood at the request of Brian Foy, a Neptune

Township police officer.2 Foy testified he read a consent form for

the blood sample to defendant as required by the department's

procedure, despite the fact that defendant was either unconscious

or sedated at the time. Although defendant did not technically

refuse his request for a blood sample, Foy completed the consent

form as a refusal because he had not obtained defendant's consent.

 An analysis of this blood sample revealed the presence of

twenty nanograms per milliliter of alprazolam (Xanax), thirty-

seven nanograms per milliliter of oxycodone,3 and 8.6 nanograms

per milliliter of morphine. A forensic psychopharmacologist

provided expert testimony, stating the concentration of these

drugs in defendant's blood would have negatively affected his

ability to perform "psychomotor and behavioral tasks," such as

driving.

 After confirming with defendant's nurse that he was able to

speak to them, Sergeant Michael Zarro of the Neptune Township

2
 A blood sample had been drawn and tested earlier for medical
purposes. No toxicological or alcohol content testing was done
of this sample.
3
 Defendant was not given oxycodone at the hospital until 11:00
p.m.

 7 A-0289-14T2
Police Department provided defendant with Miranda4 warnings and

obtained his consent to be questioned. Defendant stated he drove

from his home5 and was traveling eastbound on Route 33 when he

approached an intersection west of where the accident occurred.

Defendant told Zarro he did not remember anything from that point

on until he received medical care. Defendant also stated he had

taken thirty milligrams of oxycodone at 5:00 a.m. that day and one

milligram of Xanax at 11:00 p.m. the prior evening. Defendant's

testimony at trial was consistent with this statement.

 II.

 Defendant first argues his right to be free of unreasonable

searches and seizures, U.S. Const. amends. IV, XIV; N.J. Const.

art. 1, ¶ 7, was violated when the officer secured a blood sample

from him without a warrant or his consent. We disagree.

 The scope of appellate review of a motion judge's findings

in a suppression hearing is limited. State v. Robinson, 200 N.J.

1, 15 (2009). An appellate court "must uphold the factual findings

underlying the trial court's decision so long as those findings

are supported by sufficient credible evidence in the record."

4
 Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d
694 (1966).
5
 Defendant's mother testified she was familiar with defendant's
symptoms when he was impaired by oxycodone and that he did not
show such signs when he left the house that day.

 8 A-0289-14T2
State v. Elders, 192 N.J. 224, 243 (2007) (citation and internal

quotation marks omitted). "A trial court's findings should be

disturbed only if they are so clearly mistaken 'that the interests

of justice demand intervention and correction.'" Id. at 244

(quoting State v. Johnson, 42 N.J. 146, 162 (1964)).

 In State v. Adkins, 221 N.J. 300, 311-12, 317 (2015), the

Supreme Court reviewed the application of Missouri v. McNeely, 569

U.S. ____, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013),6 holding

that a totality of the circumstances test applies to warrantless

blood draws from drivers suspected of being under the influence.

The McNeely Court clarified that the dissipation of alcohol in the

blood did not establish a per se exigency that permitted blood to

be drawn from drunk driving suspects without a warrant. 569 U.S.

at ___, 133 S. Ct. at 1568, 185 L. Ed. 2d at 715. In State v.

Jones, 437 N.J. Super. 68, 80 (App. Div. 2014), aff'd on remand,

441 N.J. Super. 317 (App. Div. 2015), we reviewed the "special

facts" described in McNeely that would justify a warrantless blood

draw and noted the "salient points" in the analysis as follows:

 [T]he dissipation of blood alcohol continues
 to be an "essential" factor in analyzing the
 totality of the circumstances; that time spent
 investigating an accident and transporting an
 injured suspect to the hospital causes delay;

6
 Although this trial was completed before McNeely was decided,
its ruling is given retroactive effect. Adkins, supra, 221 N.J.
at 313.

 9 A-0289-14T2
 that obtaining a warrant will result in
 further delay; and that such additional delay
 will "threaten" the destruction of evidence.
 The Supreme Court did not require the State
 to show that the "further delay" would
 substantially impair the probative value of a
 blood sample drawn after a warrant was
 obtained or that it was impossible to obtain
 a warrant before the evidence was dissipated.
 In short, the Court did not require proof that
 evidence would be destroyed; it was sufficient
 to show that delays "threatened" its
 destruction.

 [Id. at 79.]

 Applying the totality of circumstances test in this case,

there were sufficient facts to support the taking of a warrantless

blood sample: a fatal accident that drew a massive response from

first responders, injuries to defendant that required

hospitalization, and a police investigation that lasted

approximately four hours. In their totality, the circumstances

presented an exigency that excused the officers from securing a

warrant because the attendant delay could have threatened the

destruction of the evidence of drugs in defendant's blood. There

is no reason to disturb the trial judge's decision to deny

defendant's suppression motion.

 III.

 Defendant argues that prosecutorial misconduct, in the form

of comments made by the prosecutor in opening and closing

 10 A-0289-14T2
statements and in the questioning of a witness, deprived him of a

fair trial. We disagree.

 In our review of the prosecutor's comments, the factors to

be considered include: "whether 'timely and proper objections'

were raised; whether the offending remarks 'were withdrawn

promptly'; . . . whether the trial court struck the remarks and

provided appropriate instructions to the jury . . . [and] whether

the offending remarks were prompted by comments in the summation

of defense counsel." State v. Smith, 212 N.J. 365, 403-04 (2012)

(citations omitted), cert. denied, ___ U.S. ___, 133 S. Ct. 1504,

185 L. Ed. 2d 558 (2013).

 Generally, if no objection was made to the
 improper remarks, the remarks will not be
 deemed prejudicial. Failure to make a timely
 objection indicates that defense counsel did
 not believe the remarks were prejudicial at
 the time they were made. Failure to object
 also deprives the court of the opportunity to
 take curative action.

 [State v. Timmendequas, 161 N.J. 515, 576
 (1999) (citations omitted), cert. denied, 534
 U.S. 858, 122 S. Ct. 136, 151 L. Ed. 2d 89
 (2001).]
 A.

 Defendant cites the following excerpt from the prosecutor's

opening statement:

 [T]he cab driver, made an immediate left-hand
 turn to avoid Mr. Laing but [the victim] was
 not so lucky. He bore down on her
 relentlessly, without any attempt to stop,

 11 A-0289-14T2
 without any attempt to get out of the way, and
 with an incredibly unimaginable horrifying
 collision of metal on metal he stopped the
 world and [the victim] was gone. She died
 instantaneously.

 There was no objection to these comments at trial. Defendant

now contends this comment improperly appealed to the jury's passion

rather than presented an argument that focused on the facts to be

proved. Certainly, the prosecutor used colorful language to

introduce the jury to the facts that would be proven. But, this

excerpt did not stray from the facts as they would be presented

through the testimony of multiple witnesses who observed the

collision or its aftermath. We discern no plain error. R. 2:10-

2.

 B.

 In summation, the prosecutor referred to the defendant more

than once as a "three-time convicted felon." Defendant argues

these references constituted an impermissible personal attack. We

disagree.

 Defense counsel objected to the first of these references,

interrupting the prosecutor mid-sentence. The judge overruled the

objection.7 The prosecutor's subsequent references to defendant

as a three-time felon were part of her attack on his credibility,

7
 Because the sidebar conference was not recorded, we do not know
what arguments were made.

 12 A-0289-14T2
most particularly his contention that he received the Xanax he

took from a doctor as loose pills in an unlabeled bottle without

a prescription. We note the second time she made this reference,

there was no objection and the prosecutor accompanied the reference

with a reminder to the jury that the judge had instructed them on

the proper use of defendant's prior convictions. Defendant does

not contend the trial judge failed to provide such appropriate

instructions, albeit not during the summation.

 Defendant concedes that the references to defendant's record

were made to attack his credibility, a permitted use. Nonetheless,

defendant argues that because the prosecutor did not phrase her

reference in such a way as to convey that this was "its only

permissible use – it reinforced the implication of [the] argument,

that the defendant's guilt or innocence should be evaluated by the

jury in light of his record." We are not persuaded by this

argument.

 Defendant also argues the prosecutor improperly denigrated

the defense. In summation, defense counsel argued defendant did

not consciously disregard the risk of driving after taking

medication because his experience in driving after taking the drug

was that he was not impaired. She also argued he did not cause

the collision; that the accident was caused because the cab swerved

into defendant's lane. This argument relied upon one description

 13 A-0289-14T2
by a passenger witness, stating the driver had swerved.

Defendant's testimony did not provide support for this defense

theory. In fact, when asked on direct examination if he recalled

a van or cab driving in front of him, cutting him off before the

accident, defendant testified, "No, I don’t."

 After reviewing evidence that supported the State's case, the

prosecutor drew an objection after stating, "Now, if in fact, it

was the fault of the cab driver, why would [the passenger witness]

come in here and vouch for him? For the defense version to work,

there would have to be a conspiracy of epic proportions between

all of the State's witnesses." Because the recording of the

sidebar conference that followed was inaudible, we do not know the

arguments made before the trial judge overruled the objection.

 Defense counsel objected on similar grounds a second time

when the prosecutor stated, "So let's take a look at some of the

detours that we had in terms of the evidence in this case." This

time, the trial judge sustained the objection and promptly gave

the jury a curative instruction, emphasizing the State's burden

to prove guilt beyond a reasonable doubt, and directing the jury

to "ignore any reference to any questions asked as detours."

 Contrary to defendant's argument, the challenged comments did

not suggest the defense was contrived, see, e.g., State v. Setzer,

268 N.J. Super. 553, 565-66 (App. Div. 1993), certif. denied, 135

 14 A-0289-14T2
N.J. 468 (1994). Rather, the argument countered the defense

summation by exploring the improbability that the State's evidence

was contrived.

 Prosecutors "are expected to make vigorous and forceful

closing arguments to juries," State v. Frost, 158 N.J. 76, 82

(1999), and "are afforded considerable leeway in that endeavor."

State v. Jenewicz, 193 N.J. 440, 471 (2008) (quoting State v.

Nelson, 173 N.J. 417, 460 (2002)). The prosecutor's comments here

did not exceed permissible bounds.

 C.

 Defendant also argues the prosecutor committed misconduct in

her direct examination of Detective Kerecman, the Fatal Accident

Unit investigator, contending that the questions were designed to

elicit expert opinion from a lay witness.

 Detective Kerecman testified that his duties as a member of

the Fatal Accident Unit were to respond to serious injury and

fatal accident collision scenes and aid in the investigations. He

received specialized training that included courses in crash

investigation and vehicle dynamics at Northwestern University and

an accident reconstruction course presented by the Institute of

Police Technology and Management. As of the time of the accident

in this case, Detective Kerecman had participated in the

investigation of eighty-five to one hundred serious and fatal

 15 A-0289-14T2
crashes. He was not offered as an expert in accident

reconstruction, however.

 During the course of his testimony, defense counsel made

repeated objections that were sustained by the judge, who expressly

limited Detective Kerecman's testimony to what he observed,

excluding opinion testimony. Nonetheless, defendant contends the

posing of questions that tested the limits of lay opinion

testimony, as to which objections were sustained, constituted

misconduct that warrants reversal. This argument lacks any merit.

 IV.

 It is not disputed that the cab driver crossed lanes from the

westbound to the eastbound lanes of Route 33. One of his

passengers testified the cab driver did so after she warned that

defendant's vehicle was coming at them and was going to hit the

cab. The passengers also testified that, following the accident,

it was agreed the cab driver would drive them to their destination

because one of them had a curfew, and then return to the accident

scene to provide a statement to the police officers and the contact

information for the passengers. The driver did so.

 16 A-0289-14T2
 Defendant contends his defense was that the collision was

caused when he attempted to avoid the cab.8 He sought to introduce

a certified abstract of the driving record of the cab driver, who

died prior to the trial. According to defendant, the abstract

showed that over the course of his driving career, the cab driver

had accumulated fifty-six points but that, at the time of the

accident, he had no points.

 In furtherance of his theory that the cab driver was at fault,

defendant contends the abstract supports an inference that the cab

driver's departure from the accident scene reflected a

consciousness of guilt and a desire to avoid possible consequences

to his driver's license status as a result of the accident. He

argues the trial judge abused his discretion in denying his motion.

This argument lacks merit.

 We accord a trial judge's evidentiary ruling "substantial

deference," State v. Morton, 155 N.J. 383, 455 (1998), cert.

denied, 532 U.S. 941, 121 S. Ct. 1380, 149 L. Ed. 2d 306 (2001),

and will reverse only when the trial judge's ruling was "so wide

of the mark that a manifest denial of justice resulted." State v.

Carter, 91 N.J. 86, 106 (1982).

8
 As we have noted, defendant did not testify that the accident
was caused by his attempt to avoid the cab. He had no memory of
the accident and, specifically, did not recall a van or cab cutting
him off before the accident.

 17 A-0289-14T2
 Citing State v. Weaver, 219 N.J. 131, 150 (2014), defendant

argues a defendant's request to admit evidence of prior bad acts

by third parties is viewed with greater liberality than a similar

motion filed by the State and that the abstract here met the

standard of relevance to warrant its admission. We disagree.

 A defendant generally may introduce "similar other—crimes

evidence defensively if in reason it tends, alone or with other

evidence, to negate his guilt." Id. at 150 (quoting State v.

Garfole, 76 N.J. 445, 453 (1978)). Although the standard to be

applied to the admissibility of the proffered evidence is "simple

relevance to guilt or innocence," ibid. (quoting Garfole, supra,

76 N.J. at 452-53),

 trial courts must still determine that the
 probative value of the evidence is not
 substantially outweighed by any of the Rule
 403 factors, which are "undue prejudice,
 confusion of issues, or misleading the jury,"
 and "undue delay, waste of time, or needless
 presentation of cumulative evidence." This
 determination is highly discretionary.

 [Id. at 151 (citations omitted).]

 The trial judge here acknowledged the correct standard for

determining whether defendant's request should be granted. He

carefully reviewed the logical steps in defendant's argument,

agreeing there was evidence to support an inference that the cab

driver's departure evinced a consciousness of guilt for causing

 18 A-0289-14T2
the accident. The judge observed, however, that defendant sought

to admit the abstract to support the argument that the cab driver

"was motivated to leave the scene . . . because he feared getting

another motor vehicle ticket or violation in addition to those he

had received in the past." The judge rejected this argument as

"based upon speculation and conjecture," noting there was no

evidence to support it. He noted further there was no evidence

that the cab driver "would have suffered any enhanced penalty, a

loss of license, a period of imprisonment, or anything else because

of his prior record of motor vehicle violations." Although the

judge found the proffered evidence was not "in any way probative

of defendant's guilt or innocence," he stated further that any

probative value was "substantially outweighed by the evidence's

prejudicial effect," i.e., that the driving abstract "would create

a substantial danger of confusing the issues or of misleading the

jury."

 Even when other-crimes evidence is relevant, the trial judge

may still exclude the evidence where its probative value is minimal

or outweighed by the Rule 403 factors. See Weaver, supra, 219

N.J. at 150-51; State v. Cook, 179 N.J. 533, 568-69 (2004). In

his thoughtful analysis of the evidentiary issue, the trial judge

properly applied the correct legal standard and concluded: the

proffered evidence lacked any probative value and had a substantial

 19 A-0289-14T2
likelihood to confuse the jury. These findings were supported by

the record. We discern no abuse of discretion.

 V.

 The State filed a motion that sought the imposition of a

discretionary extended term pursuant to N.J.S.A. 2C:44-3(a) and

N.J.S.A. 2C:43-7(a). Defense counsel did not dispute that

defendant met the statutory criteria for a discretionary extended

term but urged the court to either refrain from imposing an

extended term or impose the extended term on the controlled

dangerous substance (CDS) charge. After reviewing the standards

applicable to the imposition of an extended term and defendant's

record of convictions, the trial judge concluded that defendant

qualified as a persistent offender for sentencing to a

discretionary extended term.

 The trial judge rejected the State's request to find

aggravating factors one, two and twelve, N.J.S.A. 2C:44-

1(a)(1),(2) and (12), found aggravating factors three, six and

nine, N.J.S.A. 2C:44-1(a)(3), (6) and (9), and no mitigating

factors. The judge made additional findings to support his

conclusion that it was appropriate to consider the full sentence

range available under N.J.S.A. 2C:44-3(a) and N.J.S.A. 2C:43-7(a),

i.e., five to twenty years. The judge further noted he was mindful

that any sentence on the vehicular homicide charge was subject to

 20 A-0289-14T2
the eighty-five percent parole ineligibility period of the No

Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and a three-year

period of parole supervision. Although the judge found a mid-

range sentence within the extended range appropriate, he elected

to impose a moderately lower sentence because the underlying

criminal conduct was not intentional. On the vehicular homicide

charge, the sentence imposed was: eleven years, subject to NERA;

a three-year period of parole supervision; a ten-year suspension

of driving privileges to commence upon his release and appropriate

fines and penalties. On the CDS charge, the sentence imposed was:

a concurrent term of five years, a two-year suspension of driving

privileges and appropriate fines and penalties.9

 On appeal, defendant argues the trial judge erred in imposing

an aggregate extended term sentence of eleven years subject to

NERA. He does not dispute that the trial judge followed

appropriate procedures in sentencing him but contends "the court's

findings, while meticulous, were so wide of the mark as to

constitute an abuse of discretion." We disagree.

 We apply a deferential standard to our review of sentencing

determinations. State v. O'Donnell, 117 N.J. 210, 215 (1989).

 The appellate court must affirm the sentence
 unless (1) the sentencing guidelines were

9
 Defendant was also sentenced on multiple motor vehicle charges
related to the fatal accident that are not challenged on appeal.

 21 A-0289-14T2
 violated; (2) the aggravating and mitigating
 factors found by the sentencing court were not
 based upon competent and credible evidence in
 the record; or (3) "the application of the
 guidelines to the facts of [the] case makes
 the sentence clearly unreasonable so as to
 shock the judicial conscience."

 [State v. Fuentes, 217 N.J. 57, 70 (2014)
 (alteration in original) (quoting State v.
 Roth, 95 N.J. 334, 364-65 (1984)).]

 None of these reasons apply here. The sentencing

determination will remain undisturbed.

 Affirmed.

 22 A-0289-14T2